**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| OMAR A. ESPINAL, on behalf of himself and all other similarly situated persons,<br><br>*Plaintiff(s)*,<br><br>v.<br><br>BOB'S DISCOUNT FURNITURE, LLC, XPO LOGISTICS, INC., JANE AND JOHN DOES,<br><br>*Defendants*. | Civil Action No. 17-2854 (JMV) (JBC)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case arises from a suit filed by Plaintiff Omar A. Espinal ("Espinal" or "Plaintiff") on behalf of himself and other similarly situated persons against Defendant Bob's Discount Furniture, LLC ("Bob's"); XPO Logistics, Inc. ("XPO"); and Jane and John Does. Plaintiff seeks damages pursuant to the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq*.; the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1, *et seq*.; and the doctrine of unjust enrichment. D.E. 1. Currently pending before the Court are motions to compel arbitration and stay litigation filed by Defendant XPO (D.E. 17) and Defendant Bob's (D.E. 20). The Court reviewed the submissions in support and in opposition of the motions,[1] and considered

---

[1] Plaintiff's Complaint will be referred to hereinafter as "Compl." (D.E. 1); Defendant XPO's brief in support of its motion will be referred to hereinafter as "XPO Br." (D.E. 17); Plaintiff's brief in opposition to XPO's motion will be referred to hereinafter as "Opp. to XPO Br." (D.E. 24); Defendant XPO's reply brief will be referred to hereinafter as "XPO Reply." (D.E. 26). Defendant Bob's brief in support of its motion will be referred to hereinafter as "Bob's Br."

the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motions to compel arbitration and stay litigation (D.E. 17, 20) are **DENIED** with prejudice.

## I. BACKGROUND

The Complaint

On April 26, 2017, Plaintiff filed this putative class action lawsuit arising from what Plaintiff alleges are violations of the NJWHL and the NJWPL. D.E. 1. Plaintiff brings the suit on behalf of himself, and all other individuals who, after April 2015, performed truck driving and/or helper functions in New Jersey for Defendants. Compl. at ¶¶ 8, 28.

Defendant Bob's sells furniture and operates and utilizes a distribution facility in Edison, New Jersey (the "Bob's Facility"). *Id.* at ¶¶ 6-7. Drivers delivered goods from the Bob's Facility to Bob's customers. *Id.* at ¶ 9. Helpers traveled with drivers to assist with deliveries. *Id.* Plaintiff claims that Bob's was his employer as defined by the NJWHL and NJWPL. *Id.* at ¶ 10.

Defendant XPO[2] is a third-party provider of end-to-end goods management and logistics services. *Id.* at ¶ 12. XPO provides management and logistic services to Bob's and the Bob's Facility. *Id.* at ¶ 13. XPO also had a physical presence at the Bob's Facility. *Id.* at ¶ 19. Plaintiff claims that XPO was his employer as defined by the NJWHL and NJWPL. *Id.* at ¶ 14.

Plaintiff claims that he was assigned non-exempt tasks as a driver and/or helpers for Bob's based in the Bob's Facility. *Id.* at ¶ 16. According to Plaintiff, Bob's entered into relationships with other entities, including XPO, to conceal the fact that it had an employer-employee

---

(D.E. 22); Plaintiff's brief in opposition to Bob's motion will be referred to hereinafter as "Opp. to Bob's Br." (D.E. 25); Defendant Bob's reply brief will be referred to hereinafter as "Bob's Reply." (D.E. 27).

[2] XPO indicates that it is not the proper party and that XPO Last Mile, Inc. should have been named instead. XPO Br. at 1 n.1. XPO, however, does not request any relief in this regard.

relationship with Plaintiff. *Id.* at ¶ 17. Plaintiff contends that Bob's and XPO controlled the manner and means by which Plaintiff performed his duties, including the following: Plaintiff "reported to work at the Bob's Facility for Bob's and/or XPO, took instruction from Bob's and XPO employees, . . . communicated with Bob's and XPO employees while delivering [his] routes during the workday and handled paperwork related to or pertaining to Bob's and/or XPO." *Id.* at ¶ 19. Plaintiff was required to wear a Bob's embroidered uniform, *id.* at ¶ 18, and Bob's and XPO had the authority to reprimand and terminate Plaintiff, *id.* at ¶¶ 18-19.

In sum, Plaintiff claims that he was an employee of Bob's and XPO under NJWHL and NJWPL – not an independent contractor as defined by N.J.S.A. 43:21-19(i)(6)(A)(B)(C), or an exempt employee under NJWHL. *Id* at ¶¶ 23-24. Plaintiff claims that he routinely worked more than forty (40) hours per week and was not paid the proper overtime rate. *Id.* at ¶ 25.

The Arbitration Provisions

The Complaint does not reference any arbitration agreement. However, in their motions, both XPO and Bob's provide agreements with arbitrations provisions that each contends control here. XPO points to an agreement between SS Express Trucking LLC ("SS Express") and 3PD, Inc. ("3PD"). SS Express entered into a Delivery Services Agreement ("DSA") with 3PD on March 19, 2014. D.E. 17, Ex. B (the "DSA"). SS Express agreed to provide 3PD with delivery services and agreed that SS Express employees and agents would assist SS Express "in performing the obligations specified by" the DSA. DSA at ¶ 5. The DSA includes an arbitration clause, which reads as follows:

> *Any demand, assertion, or claim or cause of action for money, property, enforcement of a right, or equitable relief, including but not limited to allegations of misclassification or wage and hour violations ("Claim") arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association ("AAA") under its*

> *Commercial Arbitration Rules (except as may be modified by this Agreement), and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof, if necessary. This is the only remedy for any Claim related to or arising out of this Agreement.* The Parties expressly waive any right to place or enforce a mechanic's lien, or any other lien, made in connection with any Claim arising out of or relating to this Agreement. The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any alleged breach of this Agreement or any claim that all or any part of this Agreement is void or voidable. Any demand for arbitration under this Agreement must be submitted to a regional office of the AAA for processing and administration, and a copy of any such demand shall be simultaneously sent to the other party. The arbitration shall be final and binding upon the Parties. The Arbitrator shall apply the substantive law of the State of Georgia or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator's authority to render a decision shall be bound by the principles of said substantive laws and any decision shall not be contrary to same. Each party shall pay for its own costs and attorneys' fees, if any.

*Id.* at ¶ 21.1 (emphasis added).

Bob's and XPO entered into a Master Delivery Operation Service Agreement ("MDOSA") on December 21, 2015. D.E. 21, Ex. A (the "MDOSA"). The MDOSA stated that "Bob's desires to have [XPO] arrange for the delivery and other services described" in the MDOSA. MDOSA at 1. The MDOSA includes an arbitration clause that states in relevant part:

> ARBITRATION. *Any unresolved controversy or claim arising out of or relating to this Agreement* or any purchase order, except as (i) otherwise provided in this Agreement, or (ii) any such controversies or claims arising out of either Party's intellectual property rights for which a provisional remedy or equitable relief is sought, *shall be submitted to arbitration* by one arbitrator mutually agreed upon by the Parties, and if no agreement can be reached within thirty (30) days after names of potential arbitrators have been proposed by the American Arbitration Association (the "AAA"), then by one arbitrator having reasonable experience in commercial relationships of the type provided for in this Agreement and who is chosen by the AAA.

MDOSA at ¶ 22 (emphasis added).

## II. LEGAL STANDARD

In *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013), the Third Circuit explained how courts should determine what standard to apply to a motion to compel arbitration. The *Guidotti* court stated that in cases in which a motion to compel arbitration can be decided without additional evidence, courts should apply the Rule 12(b)(6) standard to the face of the pleadings. *Guidotti*, 716 F.3d at 773; *see also Sauberman v. Avis Rent a Car Sys., L.L.C.*, No. 17-0756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) ("Where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied to the motion to compel arbitration."); *Bacon v. Avis Budget Grp., Inc.*, No. 16-5939, 2017 WL 2525009, at *3 (D.N.J. June 9, 2017) (same).

However, the Third Circuit cautioned that the Rule 12(b)(6) standard was not appropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]" *Guidotti*, 716 F.3d at 774 (internal quotations and citations omitted). The *Guidotti* court continued that:

> [u]nder the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard.

*Id.* at 774 (citations omitted). In this circumstance, the court will use the Rule 56 standard in order to "ensur[e] that arbitration is awarded only if there is an express, unequivocal agreement to that effect." *Id.* (internal quotation omitted).

The *Guidotti* court summarized its guidance as follows:

> To summarize, when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.

*Id.* at 776 (internal quotations, citations, and brackets omitted).

Here, as noted, the Complaint does not mention any arbitration agreement. As a result, the Court must go beyond the face of the pleading and review the text of the relevant contracts. Therefore, the Court will apply the Rule 56 summary judgment standard. Under Rule 56, a moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes

over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III. ANALYSIS

The parties debate the scope of the arbitration clauses cited by XPO and Bob's. To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The parties indicate that New Jersey law applies[3] to the two relevant questions for Defendants' motions: (1) whether a court should decide if Plaintiff's claims are arbitrable; and (2) if so, whether Plaintiff's claims are within the scope of the arbitration clause. *See Moon v. Breathless Inc*, 868 F.3d 209, 213 (3d Cir. 2017) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

New Jersey courts apply basic contract principles when determining whether a valid arbitration agreement exists. *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 87 (2002). To be enforceable, a "waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." *Leodori v. CIGNA Corp.*, 175 N.J. 293, 302 (2003). "Generally, [New Jersey courts] determine a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument." *Id.* In deciding whether a dispute falls within the scope of a valid arbitration agreement, New Jersey courts have ruled that "'there is a presumption of arbitrability[:] an order to arbitrate the particular

---

[3] Because the parties assume that New Jersey law governs this case, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999) ("[D]espite the interstate, and indeed international, nature of the putative transactions at issue, the parties have not chosen to address choice-of-law issues. . . . Because the parties appear to be in agreement on this issue, we will assume, without deciding, that Pennsylvania law supplies the appropriate substantive rules.")).

8

grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co.*, 584 F.3d at 524 (quoting *AT & T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks and citations omitted)).

There are several disputes among the parties for which the Court would normally permit discovery pursuant to holding in *Guidotti*. These issues include, among others, Plaintiff's employment relationship with SS Express; XPO's relationship with 3PD because 3PD was the party that actually entered into the DSA with SS Express[4]; and the effect of Bob's MDOSA with XPO vis-à-vis Plaintiff. Neither XPO nor Bob's has a contract directly with Plaintiff which requires arbitration. Bob's relationship with Plaintiff is even more tenuous, as its arbitration agreement is with XPO rather than Plaintiff's purported employer, SS Express.

As a non-signatory to either the DSA or MDOSA, Plaintiff could only be bound by the arbitration provisions in limited circumstances. "Under New Jersey law, a non-signatory may be bound to an arbitration agreement under one of several theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) third-party beneficiary, (5) veil-piercing/alter ego, and (6) waiver and estoppel." *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 348 (D.N.J. 2012) (citing *EPIX Holdings Corp. v. Marsh & McLennan Companies, Inc.*, 410 N.J. Super. 453, 463 (App. Div. 2009), *overruled on other grounds, Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430 (2014); *Alfano v. BDO Seidman, LLP*, 393 N.J. Super. 560, 569 (App. Div. 2007)). XPO and

---

[4] Plaintiff argues that "Defendant XPO has provided no evidence or argument that it is a successor-in-interest to 3PD, Inc., an assignee of the 3PD, Inc. DSA with SS Express or something else that could arguably allow XPO to enforce the arbitration provision at issue." Pl. XPO Opp. at 1. XPO responds that Plaintiff's counsel is counsel of record in two other cases pending against XPO in which it has been explained that 3PD changed its name to XPO. Def. XPO Reply at 2.

Bob's claim that Plaintiff is subject to the agency and estoppel theories. To properly determine whether Plaintiff is bound as a non-signatory, discovery is necessary.

However, for the reasons that follow, assuming all of the foregoing facts (and the reasonable inferences therefrom) in favor of XPO and Bob's, the Court still finds that their motions fall short. As a result, the Court does not order discovery.

### A. The Court Should Decide Arbitrability

The first issue is whether the Court, as opposed to an arbiter, should determine the scope of the arbitrability provisions. The Court turns to New Jersey law to determine who decides the arbitrability of Plaintiff's claims. As the New Jersey Supreme Court has guided, "[s]tate law governs not only whether the parties formed a contract to arbitrate their disputes, but also whether the parties entered an agreement to delegate the issue of arbitrability to an arbitrator." *Morgan v. Sanford Brown Inst.*, 225 N.J. 289, 303 (2016). In *Morgan*, the New Jersey Supreme Court took guidance from the United States Supreme Court's interpretation of the Federal Arbitration Act ("FAA"). The New Jersey Supreme Court observed that "[a]lthough the FAA expresses a national policy favoring arbitration, the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability." *Id.* at 304 (citing *First Options*, 514 U.S. at 944); *see also Moon*, 868 F.3d at 213 ("Under New Jersey law, 'the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability.'" (quoting *Morgan*, 225 N.J. at 304)). "Parties to an arbitration agreement can agree to delegate to an arbitrator the issue of whether they agreed to arbitrate a particular dispute." *Morgan*, 225 N.J. at 303 (citation omitted).

"An agreement to delegate arbitrability to an arbitrator, like an arbitration agreement itself, must satisfy the elements necessary for the formation of a contract under state law." *Morgan*, 225 N.J. at 295 (citing *First Options*, 514 U.S. at 944). "Unless the parties have clearly delegated to

an arbitrator the decision whether the parties agreed to arbitration, the issue is for a court to resolve." *Morgan*, 225 N.J. at 295–96 (citation omitted). The New Jersey Supreme Court, adopting the same standard set by the United States Supreme Court in interpreting the FAA, held that under New Jersey law, "to overcome the judicial-resolution presumption, there must be "clea[r] and unmistakabl[e] evidence that the parties agreed to arbitrate arbitrability." *Morgan*, 225 N.J. at 304 (quotations omitted). "Silence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability." *Id.* In sum, if there is an ambiguity as to the delegation of the arbitrability determination, the court decides the issue.

Here, the arbitration clause in the DSA[5] is not silent in regards to arbitrability. However, the clause is ambiguous. Plaintiff brings his claims pursuant to the NJWHL, the NJWPL, and unjust enrichment. The DSA arbitration clause states in relevant part:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of *this Agreement*, including but not limited to any alleged breach of *this Agreement* or any claim that all or any part of *this Agreement* is void or voidable.

DSA at ¶ 21.1 (emphases added).

The DSA language limits this by stating that the arbitrator will determine the arbitrability of allegations as to the "Agreement," meaning the DSA. However, Plaintiff does not bring any claims pursuant to the Agreement. Instead, he relies on two statutes, the NJWHL and the NJWPL, as well as one quasi-contract theory, unjust enrichment. As a result, the relevant DSA language is

---

[5] Bob's, for the most part, relies on XPO's arguments as to the arbitration issues. *See, e.g.* Bob's Br. at 1 ("For the reasons set forth in XPO LM's Motion to Compel, which are incorporated herein by reference, and as discussed below, Espinal is bound, even as a non-signatory, to the arbitration agreement between his employer and XPO LM."). XPO, in turn, addresses the arbitration provision in the DSA. As a result, the Court does not review the arbitration provision in the MDOSA.

11

not "clear and unmistakable" evidence of an agreement to delegate the determination of arbitrability of Plaintiff's statutory claims. This limitation, as to claims arising solely as to the DSA, on the arbitrator's ability to determine arbitrability creates an inherent ambiguity. Therefore, because the arbitrability delegation clause in the DSA is ambiguous, the presumption that the Court decides arbitrability applies. *Morgan*, 225 N.J. at 304 ("Silence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability." (emphasis added)). Accordingly, the Court now proceeds to deciding whether Plaintiff's claims are within the scope of the arbitration clause.

### B. Plaintiff's Claims Are Not Subject to Arbitration under the DSA

In turning to whether Plaintiff's statutory and unjust enrichment claims are within the scope of the arbitration clause in the DSA, it is helpful to briefly describe three cases in which the New Jersey Supreme Court considered the same issue.[6] First, in *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.,* 168 N.J. 124 (2001), a plaintiff brought claims against his former employer, including statutory claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq*. The arbitration clause signed by Plaintiff stated, in part, that

> Except as otherwise expressly set forth in Paragraphs 14 or 15 hereof, *any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration* in Morristown, New Jersey, in accordance with the rules then obtaining of the American Arbitration Association[.]

*Id.* at 128 (emphasis added). The question was whether the clause included a waiver of Plaintiff's rights to bring his NJLAD claims in court.

---

[6] In *Moon*, the Third Circuit similarly engaged in a detailed examination of these three cases. *See* 868 F.3d at 215-218.

12

The *Garfinkel* Court first stated that the doctrine that "parties to an agreement may waive statutory remedies in favor of arbitration is a settled principle of law in [New Jersey]." *Id.* at 131. However, New Jersey Supreme Court cautioned that waivers are not without limit. "Subsumed in [the principle that an agreement to arbitrate should be read liberally in favor of arbitration,] is the proposition that only those issues may be arbitrated which the parties have agreed shall be." *Id.* at 132. The Court in *Garfinkel* continued that "a party's waiver of statutory rights *must be clearly and unmistakably established*, and contractual language alleged to constitute a waiver will not be read expansively." *Id.* (emphasis added) (quotation omitted). The *Garfinkel* Court concluded that the arbitration clause was "insufficient to constitute a waiver of plaintiff's remedies under the [NJ]LAD" because the "language suggest[ed] that the parties intended to arbitrate o*nly those disputes involving a contract term, a condition of employment, or some other element of the contract itself.*" *Id.* at 134 (emphasis added). The Court indicated that its holding was not meant to

> suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. *To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination.* It should also reflect the employee's general understanding of the type of claims included in the waiver, e.g., workplace discrimination claims.

*Id.* at 135 (emphasis added).

Next, in *Martindale v. Sandvik, Inc.*, 173 N.J. 76 (2002), a plaintiff brought statutory claims against her former employer under the NJLAD and the New Jersey Family Leave Act ("NJFLA"), N.J.S.A. 34:11B-1, *et seq.* When she applied to her employment position, she completed an employment application. The arbitration agreement in the employment application stated:

> AS A CONDITION OF MY EMPLOYMENT, I AGREE TO WAIVE MY RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING RELATED TO MY EMPLOYMENT WITH SANDVIK.
>
> I UNDERSTAND THAT I AM WAIVING MY RIGHT TO A JURY TRIAL VOLUNTARILY AND KNOWINGLY, AND FREE FROM DURESS OR COERCION.
>
> I UNDERSTAND THAT I HAVE A RIGHT TO CONSULT WITH A PERSON OF MY CHOOSING, INCLUDING AN ATTORNEY, BEFORE SIGNING THIS DOCUMENT.
>
> I AGREE THAT ALL DISPUTES RELATING TO MY EMPLOYMENT WITH SANDVIK OR TERMINATION THEREOF SHALL BE DECIDED BY AN ARBITRATOR THROUGH THE LABOR RELATIONS SECTION OF THE AMERICAN ARBITRATION ASSOCIATION.

*Martindale*, 173 N.J. at 81–82. The New Jersey Supreme Court held that Plaintiff had waived her right to judicial remedies under the NJLAD and the NJFLA. The Court reasoned that the language in the arbitration agreement was clear and unambiguous, and also was broad enough to encompass the plaintiff's statutory claims. *Id.* at 883-84. Specifically, the *Martindale* Court found that the language of the arbitration agreement stating that "in any action or proceeding relating to my employment with [defendant]" and that "all disputes relating to my employment with [defendant] or termination thereof [shall be subject to arbitration]" was broad enough to encompass the plaintiff's statutory claims and had no limiting language – unlike the arbitration clause in *Garfinkel*. In other words, the arbitration language in *Martindale* was not expressly limited to disputes concerning the employment agreement and instead governed all disputes relating to the plaintiff's employment or termination.

Lastly, in *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430 (2014), a plaintiff brought claims related to a service contract under the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et*

14

*seq.*, and the Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq*. The service contract included an arbitration clause that stated, in part as follows:

> Arbitration: In the event of any claim or dispute between Client and the USLSG *related to this Agreement* or related to any performance of any services *related to this Agreement*, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party.

*Id.* at 437 (emphasis added). The *Atalese* Court concluded that the plaintiff's statutory claims were not waived by the arbitration clause because the arbitration clause was not clear and unambiguous. The *Atalese* Court reasoned that "[n]owhere in the arbitration clause is there any explanation that plaintiff is waiving her right to seek relief in court for a breach of her statutory damages." *Id.* at 446. Instead, like *Garfinkel*, the arbitration provision was expressly limited to disputes "related to" the service contract. However, the Court in *Atalese* also cautioned that

> [w]e do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration. But the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute. Mutual assent to an agreement requires mutual understanding of its terms. After all, [a]n effective waiver requires a [consumer] to have full knowledge of [her] legal rights before she relinquishes them.

*Id.* at 446–47 (quotations omitted).

The Third Circuit also considered a similar issue in *Moon v. Breathless Inc.*, 868 F.3d 209 (2017), in which a plaintiff brought statutory wage and hour claims, including claims under the NJWPL and NJWHL. The plaintiff was a performer who signed a contract with the defendant. The contract stated that plaintiff was an independent contractor, but plaintiff challenged this status. The defendant argued that the plaintiff's claims were subject to the contract's arbitration provision.

15

The arbitration clause stated, in part: "In a dispute between Dancer and Club *under this Agreement*, either may request to resolve the dispute by binding arbitration." *Id.* at 212 (emphasis added).

Like the current matter, New Jersey law applied. The Third Circuit first reviewed the decisions in *Garfinkel*, *Martindale*, and *Atalese*. *Id.* at 215-18. Judge Greenaway, writing for the court, held that the plaintiff's claims "arise under the [New Jersey statutes], not the agreement itself," *id.* at 218, and reversed the district court's holding that plaintiff's claims were subject to arbitration. The court in *Moon* reasoned that the arbitration provision at issue only referred to disputes pursuant to the relevant contract and did not mention statutory claims. *See id.* at 216.

Turning to this case, the pertinent language in the DSA's arbitration clause is arguably broader than the language considered in *Garfinkel* and *Atalese*, but not as broad or clear as the language considered in *Martindale*. The relevant portion of the DSA states:

> *Any* demand, assertion, or claim or cause of action for money, property, enforcement of a right, or equitable relief, including but not limited to allegations of *misclassification or wage and hour violations* ("Claim") *arising out of or relating to this Agreement, or the breach thereof,* shall be settled by arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules (except as may be modified by this Agreement), and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof, if necessary. This is the only remedy *for any Claim related to or arising out of this Agreement.*

DSA at ¶ 21.1 (emphases added). While the DSA's arbitration clause does mention "allegations of misclassification or wage and hour violations" – which are the majority of Plaintiff's claims – the clause also limits what claims are subject to arbitration by stating that arbitration is applicable to those allegations "*arising out of or relating to this Agreement, or the breach thereof.*" *Id.*

The Court finds that this language renders the scope of the arbitration clause ambiguous. As the New Jersey Supreme Court has ruled, a waiver of statutory rights must be clear and

16

unmistakable. While the arbitration clause notes that it covers "allegations of misclassification or wage and hour violations," the clause limits claims subject to arbitration to those "arising out of or relating to [the DSA]." As a result, the clause is inherently ambiguous. In other words, the DSA's arbitration provision appears to potentially refer to statutory rights but then limits claims to those related to the contract.

In sum, the language at issue here is broader than that of either *Garfinkel* or *Atalese*, in which the arbitration provisions were limited to disputes relating to the agreements. Yet, the DSA's arbitration provision is not as clear or as broad as that in *Martinadale*, which addressed all disputes relating to the plaintiff's employment or termination. *See Moon*, 868 F.3d at 218 ("Because the arbitration clause at bar resembles those at issue in *Garfinkel* and *Atalese* more than the one at issue in *Martindale* and because [plaintiff's] claims arise under statutes rather than the Contract, we find that the arbitration clause does not cover [plaintiff's] statutory wage-and-hour claims."). Because the DSA's arbitration clause is not clear and unmistakable as to statutory rights, Defendants' motions to compel arbitration are denied.[7]

## IV. CONCLUSION

Defendants' motions to compel arbitration and stay litigation (D.E. 17, 20) are **DENIED** with prejudice. An appropriate Order accompanies this Opinion.

Dated: May 18, 2018

John Michael Vazquez, U.S.D.J.

---

[7] XPO argues that the "arising out of or relating to" language in the arbitration provision demonstrates the breadth of the arbitration provision. XPO Reply at 4. The Court finds this argument unconvincing because the arbitration provision in *Garfinkel* also contained the "arising out of, or relating to" modifier, 168 N.J. at 128, but the New Jersey Supreme Court nevertheless found that the plaintiff's claims were not subject to arbitration.