James J. Panzini
766 Shrewsbury Avenue
Tinton Falls, NJ 07724
732-532-6148
Fax: 732-842-0301
james.panzini@jacksonlewis.com

Adam L. Lounsbury (*pro hac vice*)
JACKSON LEWIS P.C.
701 E. Byrd Street, 17th Floor
Richmond, Virginia 23219
804-649-0404
Fax: 804-649-0403
adam.lounsbury@jacksonlewis.com

*Attorneys for Defendant XPO Last Mile, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY (NEWARK)

| | |
|---|---|
| OMAR A. ESPINAL, FREDY O. CARBAJAL, ARLEN Y. MARTINEZ, OSCAR RENE CALDERON ROMERO and WELLINGTON TORRES,<br><br>On behalf of themselves and all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>BOB'S DISCOUNT FURNITURE, LLC, & XPO LAST MILE, INC.,<br><br>Defendants. | Civ. No.:  2:17-cv-02854 (JMV)(JBC)<br><br>Hon. John Michael Vazquez<br><br><br>**DEFENDANTS XPO LAST MILE, INC.'S AND BOB'S DISCOUNT FURNITURE, LLC'S JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION ON THE ISSUE OF ASCERTAINABILITY** |

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT_____1

BACKGROUND FACTS_____3

I.    The Relevant Relationships and Records._____3

II.   The Proposed Class & Claims._____5

III.  The Current Motion._____6

ARGUMENT_____8

I.    Legal Standard._____8

II    A Class Without a Claim is No Class at All._____9

III.  A Few Spreadsheets and Rosters Do Not Establish A Reliable and
Administratively Feasible Mechanism._____14

     a.   Plaintiffs Propose No "Mechanism."_____14

     b.   Plaintiffs Have Not Demonstrated the Evidence Reliably Predicts
Class Membership._____17

     c.   Plaintiffs Have Not Demonstrated Administrative Feasibility._____24

IV.  Defendants Reserve Their Right to Appeal._____28

CONCLUSION_____30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Adami v. Cardo Windows, Inc.,
299 F.R.D. 68 (D.N.J. 2014) …………………………………………... 26

Arnold v. DirecTV, LLC,
No. 4:10-CV-352-JAR, 2017 U.S. Dist. LEXIS 48472 (E.D. Mo. Mar. 31, 2017) …………………………………………………..…...…… 12, 27

Byrd v. Aaron's Inc.,
784 F.3d 154 (3d Cir. 2015) …………………………………….... 9, 16

Bobryk v. Durand Glass Mfg. Co.,
50 F. Supp. 3d 637 (D.N.J. 2014) …………………………….…..... 26, 27

Carrera v. Bayer Corp.,
727 F.3d 300 (3d Cir. 2013) ………………………………………… 9, 16

Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.,
321 F.R.D. 193, (E.D. Pa. 2017) …………………………...…….. 10

Chatman v. Sears, Roebuck & Co. Tools Mktg. & (In re Sales Practice Litig.),
No. MDL-1703 et al., 2009 U.S. Dist. LEXIS 97594 (N.D. Ill. Oct. 20, 2009) ………………………………………………………… 10

City Select Auto Sales Inc. v. BMW of N. Am. Inc.,
867 F.3d 434 (3d Cir. 2017) ………………………………………… 16

Clark v. Bumbo Int'l Trust,
No. 15 C 2725, 2017 U.S. Dist. LEXIS 137606 (N.D. Ill. Aug. 28, 2017) ………………………………………………………….... 10

Daigle v. Shell Oil Co.,
133 F.R.D. 600 (D. Colo. 1990) …………………………….…. 10

Daniel F. v. Blue Shield of Cal.,
    305 F.R.D. 115 (N.D. Cal. 2014) ……………………………………… 15

Deangelis v. Bally's Park Place, Inc.,
    298 F.R.D. 188 (D.N.J. 2014) …………………………………….… 25

Fenwick v. Ranbaxy Pharms, Inc.,
    353 F. Supp. 3d 315 (D.N.J. 2018) ……………………………………… 25

Hargrove v. Sleepy's LLC,
    974 F.3d 467 (3rd Cir. 2020) ………………………...………………….. *passim*

Harris v. Med. Transp. Mgmt.,
    No. 17-cv-01371 (APM), 2020 U.S. Dist. LEXIS 175335 (D.D.C. Sep.
    24, 2020) …………………………………………………..……....……12, 27

In re FleetBoston Fin. Corp. Sec. Litig.,
    No. 02-4561, 2005 U.S. Dist. LEXIS 36431 (D.N.J. Dec. 22, 2005)……... 9

In re Ry. Indus. Emple. No-Poach Antitrust Litig.,
    395 F. Supp. 3d 464 (W.D. Pa. 2019) ………………………….……………….. 8

In re Tropicana Orange Juice Mktg. & Sales Practices Litig.,
    No. 2:11-07382, 2018 U.S. Dist. LEXIS 979 (D.N.J. Jan. 22, 2018) ……. 18

James v. Uber Tech. Inc.,
    No. 19-cv-06462-EMC, 2021 U.S. Dist. LEXIS 14642 (N.D. Cal. Jan.
    26, 2001) ……………………………………………………..……….. 8, 11, 15

Marcus v. BMW of N. Am., LLC,
    687 F.3d 583 (3rd Cir. 2012) ………………….…………………… 8, 10, 18

McCleery v. Allstate Ins. Co.,
    37 Cal. App. 5th 434 (Ct. App. 2019) …………………………....12, 27

Messner v. Northshore Univ. HealthSystem,
    669 F.3d 802 (Cal. App. 2012) ……………………………………… 10

Neale v. Volvo,
    No. 10-4407, 2017 U.S. Dist. LEXIS 201309 (D.N.J. Dec. 6,
    2017) …………………………………..…………………………… 10, 25

Oshana v. Coca-Cola Co.,
    472 F.3d 506 (7th Cir. 2006) …..………………………………………… 10

Spencer v. Beavex, Inc.,
    No. 05-cv-1501, 2006 U.S. Dist. LEXIS 98565 (S.D. Cal. Dec. 15,
    2006) ……………………………………………..………………….. 28

Stewart v. Beam Global Spirits & Wine, Inc.,
    No. 11-5149, 2015 U.S. Dist. LEXIS 74116 (D.N.J. June 8, 2015) ...…… 18

Town of Lexington v. Pharmacia Corp. Solutia,
    No. 12-cv-11645, 2015 U.S. Dist. LEXIS 36814 (D. Mass. Mar. 24,
    2015) ………………………………………………………………… 10

Wachtel v. Guardian Life Ins. Co.,
    453 F.3d 179 (3d Cir. 2006) ……………………………………………… 10

Warnick v. Dish Network LLC,
    301 F.R.D. 551 (D. Colo. 2014) ……………………………..…… 10

Wilson v. Consolidated Rail Co. (In re Paulsboro Derailment Cases),
    No. 12-784 et al., 2014 U.S. Dist. LEXIS 115542 (D.N.J. Aug. 20,
    2014) ………………………………………………………………….. 10, 25

Wilson v. The La Jolla Grp.,
    No. D077134, 2021 Cal. App. LEXIS 201 (Ct. App. Mar. 12, 2021)  …... 12

## Statutes

N.J.S.A. 34:11-4.1, et seq. ............................................................6

N.J.S.A. § 34:11-56a, et seq...........................................................6, 15

**Other Authorities**

Fed. R. Civ. P. 23 ...............................................................................*passim*

Manual for Complex Litigation (Fourth) § 21.222 (2004) …...………………. 8, 24

XPO Last Mile, Inc. ("XPO LM") and Bob's Discount Furniture, LLC ("Bob's") submit the following joint memorandum opposing Plaintiffs Omar A. Espinal, Fredy O. Carbajal, Arlen Y. Martinez, Oscar Rene Calderon Romero and Wellington Torres's (individually identified by last name and collectively "Plaintiffs") Motion for Class Certification on the Issue of Ascertainability, filed March 12, 2021 (Dkt. No. 132).

## PRELIMINARY STATEMENT

The Court denied Plaintiffs' motion for class certification because Plaintiffs did not prove the putative overtime class was ascertainable.  Dkt. No. 100, at 22. Plaintiffs now seek to amend the Order denying class certification and argue that a hodge-podge of records they possessed when making the first motion repairs the prior lack of evidentiary support.  The information they put before the Court, however, is inadequate to establish an objective, administratively feasible and reliable mechanism for identifying those who could have been jointly employed and may be entitled to unpaid overtime wages.  This dual requirement is necessary because this case is against two of 49 alleged joint employers with different employment practices, and establishing who is liable for paying an alleged overtime claim is meaningless unless the Court is satisfied that the putative class contains those individuals to whom a Court may award relief—those allegedly owed overtime by one or more of the 47 Carriers.

1

The shortcomings of Plaintiffs' position start with the class definition. As written, the definition identifies only those who could have been jointly employed, but critically it lacks any connection to an overtime claim. Consequently, the definition does not set forth objective criteria adequate to ascertain the putative, joint employment, overtime class. For this reason alone, the ascertainability requirement cannot be satisfied. Even if Plaintiffs' definition did not fail on its face, however, Plaintiffs' evidence does not survive a rigorous analysis.

The information Plaintiffs offer focuses exclusively on which drivers and helpers could have been jointly employed by Defendants; however, it does not connect their purported employment status with any substantive overtime claim. In fact, Plaintiffs do not mention "overtime" once in their moving brief and have neither explained nor proven the information on which they rely can identify who might be entitled to unpaid overtime.

Further, Plaintiffs have not proven that there is a reliable and administratively feasible mechanism for ascertaining who was both jointly employed by XPO LM and Bob's and who among them may be owed overtime. Plaintiffs rely on a handful of spreadsheets and other information; however, in lieu of methodically demonstrating how or whether this information could be used to ascertain a class, Plaintiffs merely put this information before the Court in hopes that their unsupported inferences and supposition are enough. They are not. Plaintiffs'

submissions do not even show that Plaintiff Carbajal was assigned by his employer to perform a single delivery of goods Bob's sold that were tendered by XPO LM. Further, the submissions show only that the four remaining plaintiffs were assigned by their respective employers to perform a delivery of goods sold by Bob's and tendered by XPO LM on *five* days during the 2,000 plus day class period. Nothing submitted demonstrates that Plaintiffs themselves could have suffered an overtime violation, let alone class-wide overtime violations. The Plaintiffs' paltry showing simply cannot withstand rigorous analysis and does not satisfy Rule 23's ascertainability requirement.

Plaintiffs again ask this Court to certify a class in an evidentiary vacuum. The objective criteria are missing, and the evidence does not establish an administratively feasible or reliable mechanism for identifying class members. Plaintiffs' proof and arguments are inadequate. There is no good reason to amend the Court's prior Order denying class certification. Consequently, the Court should deny Plaintiffs' motion.

## **BACKGROUND FACTS**

## I.     **The Relevant Relationships and Records**.

The parties briefed class certification in full, and only those facts relevant to the Plaintiffs' attempt to amend the Court's prior denial of class certification are addressed here. <u>See</u> Dkt. 100. The constituents in this case include Bob's (a furniture retailer that sells furniture), XPO LM (a freight forwarder that provides

logistics services), the 47 Carriers (motor carriers that provide delivery services), and the putative class (the delivery service teams employed or otherwise engaged by the 47 Carriers to perform delivery services). Id. at 2-4.

Bob's sells home goods to consumers who request delivery of the items they purchase. See Defs.' Opp. to Pls.' Mot. to Certify (Dkt. No. 90), Apr. 6, 2020, at 9 (record citations listed therein). XPO LM takes possession of goods sold and organizes them into truckloads for delivery. Id. at 9-11. XPO LM offers these truckloads to the 47 Carriers for delivery. Id. The 47 Carriers accept some of those offers and send delivery teams to pick up and deliver the goods. Id. at 10-11. The Carriers communicate their acceptance of those offers and retain and exercise authority to substitute delivery teams of their choosing. Id. at 17-18.

The 47 Carriers often made these changes on the fly and did not communicate them to XPO LM. Id. at 18. Consequently, the records may suggest that one team performed work when in fact another team performed the work, or one of the Carriers substituted a driver or helper at the last minute to accommodate their own operational needs. Id. at 18, 23. The teams assigned to perform deliveries, the number of days any driver or helper performs deliveries, and the number of hours a driver or helper works in a week are all controlled by the 47 Carriers. Id. at 13-14, 17-18. Indeed, the delivery teams that a Carrier assigns to a route could be (and were) directed by the Carrier to perform work for any one of the Carrier's other

customers (which would not count as hours worked for purposes of the overtime claim here).  Id. at 22-23.

XPO LM, by collecting background checks and drug screens on delivery teams, maintains a roster of the drivers and helpers that the 47 Carriers have made available to perform deliveries of home goods sold by Bob's but Defendants have no reliable way to determine which driver or helper performed what deliveries on a given day.  Id. at 23.  In fact, one of XPO LM's former operations managers, Issani Ballard ("Ballard"), testified that she could not estimate how often these last-minute changes to the routes occurred "because it varied daily."  Ballard Dep. (Dkt. No. 87-18) 139:1-6.   For these reasons, the daily manifests and other records associated with each route do not accurately reflect which delivery team was delivering Bob's merchandise on any given day or whether an assigned team performed the delivery. Dkt. No. 90, at 23.

## II.    The Proposed Class & Claims.

Since the inception of this case, Plaintiffs identified the Carriers for which they worked, ABC Corps. (and their owners), as their primary employers.  See Compl. (Dkt. No. 1); First Am. Compl. (Dkt No. 64); Second Am. Compl. (Dkt. No. 74).  And, at all times, Plaintiffs allege Bob's and XPO LM jointly employed them and owe them overtime wages allegedly unpaid by the Carriers for which they worked.  See Third Am. Compl. ("TAC") (Dkt. No. 122) ¶¶ 1, 47-57.

When the TAC was filed, and contrary to this Court's instructions, Plaintiffs removed allegations from the TAC that the Carriers and their owners were Plaintiffs' and the putative class's primary employers. See Dkt. No. 122. Nevertheless, Plaintiffs still maintain claims for unpaid overtime (N.J. Stat. Ann. § 34:11-56a, et seq.), improper deductions (N.J. Stat. Ann. § 34:11-4.1, et seq.), and unjust enrichment. Id. All of which are predicated on a joint employment theory under which XPO LM and Bob's are not the primary employers. See Dkt. No. 100.

Plaintiffs seek to certify the following class:

> All individuals that were based out of Defendants' Edison and Carteret, New Jersey, warehouses that performed truck driving and/or helper functions for the Defendants from April 26, 2015 through to January 2017 out of the Edison Facility and from May 1, 2017 through to the present out of the Carteret Facility, who did not have direct contracts with either Defendant.

Dkt No. 132, at 1. Plaintiffs do not seek to certify for class treatment their improper deduction or unjust enrichment claims.

## III.   The Current Motion.

On November 17, 2020, Plaintiffs advised the Court they intended to file a "renewed class certification motion" and asked "whether the Court required a full re-briefing of the entire class certification motion, or a specific motion on the ascertainability issue alone." Pls.' Ltr., Nov. 17, 2020 (Dkt. No. 110). In response, Defendants objected to briefing only ascertainability, arguing that all certification

issues should be briefed anew "so that all the rights and privileges attendant to a complete record are afforded to all parties."  Defs.' Ltr., Nov. 24, 2020 (Dkt. No. 112, at 1-2), citing Hargrove v. Sleepy's LLC, 974 F.3d 467, 470 (3d Cir. 2020). Defendants reiterated their position during a status conference on November 30, 2020, and again raised concerns about being deprived of the opportunity to seek interlocutory review of a complete Rule 23 record under Rule 23(f) if Plaintiffs addressed only ascertainability in a renewed motion.  The Court concluded that "[t]o the extent [Defendants] want to make it clear in [their] papers that [they] disagree for purposes of an interlocutory appeal, that's fine with [the Court]," and that it would "note it in any subsequent decision."  Hr'g Tr., Nov. 30, 2020 (Dkt. No. 126, at 8-9).

Defendants' objected again on the re-briefing issue after the Court allowed Plaintiffs to file the TAC in which Plaintiffs bolstered their allegations concerning jurisdiction, removed substantive allegations against joint employers, and dropped from the lawsuit the 47 Carriers that were Plaintiffs' and the putative class members' joint employers.  See Pls.' Ltr., Feb. 16, 2021 (Dkt. No. 126); Defs.' Ltr., Feb. 17, 2021 (Dkt. No. 127).

On February 17, 2021, the Court formally ordered the parties to limit the class certification briefing, stating: "To the extent the Court ruled on issues pertaining to class certification in its prior Opinion, the parties are not free to raise those issues

again" but "the parties may address any issues which the Court did not render a decision."  Order, Feb. 17, 2021 (Dkt. No. 128), at 2.

Plaintiffs subsequently filed a "motion for class certification focusing upon the issue of ascertainability," under Rule 23(c)(1)(C) to "alter or amend" the Court's prior Order denying class certification, noting the Court's limitations and incorporating the holdings of the earlier Opinion denying class certification.  Pls.' Memo. Supp. Mot. for Class Cert. ("Mov. Br.") (Dkt. No. 132-1), at 1.

## ARGUMENT

### I.  Legal Standard.

In the Third Circuit, "a Rule 23(b)(3) class must . . . be 'currently and readily ascertainable based on objective criteria.'"  Hargrove v. Sleepy's LLC, 974 F.3d 467, 477 (3d Cir. 2020) quoting Marcus v. BMW of N. Am. LLC, 687 F.3d 583, 593 (3d Cir. 2012).  Plaintiffs satisfy the ascertainability requirement when they prove by a preponderance of the evidence that they can identify "the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in Rule 23(b)(3) action."  See, e.g., Manual for Complex Litigation (Fourth) § 21.222 (2004); see also James v. Uber Tech. Inc., No. 19-cv-06462-EMC, 2021 U.S. Dist. LEXIS 14642, at *7 (N.D. Cal. Jan. 26, 2001); In re Ry. Indus. Emple. No-Poach Antitrust Litig., 395 F. Supp. 3d 464, 514 (W.D. Pa.

2019); In re FleetBoston Fin. Corp. Sec. Litig., No. 02-4561, 2005 U.S. Dist. LEXIS 36431, at *13 (D.N.J. Dec. 22, 2005) (same).

To carry this burden, Plaintiffs must prove "(1) the class is defined with reference to **objective criteria**; and (2) there is a **reliable** and **administratively feasible mechanism** for determining whether putative class members fall within the class definition." Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015) (emphasis added). The Court is required to "undertake a rigorous analysis of the evidence to determine if the standard is met." Sleepy's, 974 F.3d at 477, citing Carrera v. Bayer Corp., 727 F.3d 300, 306 (3d Cir. 2013).

Under this standard, Plaintiffs cannot simply identify individuals whom XPO LM and Bob's could have theoretically jointly employed. Because Plaintiffs seek to certify a putative class of those who are allegedly owed unpaid overtime wages, Plaintiffs must also show they are capable of identifying those who are owed unpaid overtime wages. Class certification should again be denied because (1) Plaintiffs' proposed class definition lacks objective criteria needed to ascertain the class, and (2) the evidence does not reveal a reliable and administratively feasible mechanism to identify those who allegedly suffered overtime violations.

## II.   A Class Without a Claim is No Class at All.

The ascertainability inquiry begins and ends with the class definition. Absent a proper definition a court cannot identify a group of individuals who may be entitled

to relief on a class-wide basis.  Where the district court has doubts about whether the requirements of Rule 23 are met, particularly in light of an overbroad class definition that does not adequately connect the proposed class members to the relief sought (here, overtime wages), the court should not certify the class.  See Neale v. Volvo, No. 10-4407, 2017 U.S. Dist. LEXIS 201309, at *11 (D.N.J. Dec. 6, 2017).

A proper class definition must include "(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." Wachtel v. Guardian Life Ins. Co., 453 F.3d 179, 187-88 (3d Cir. 2006); see Fed. R. Civ. P. 23(c)(1)(B).  Overly broad or overly inclusive class definitions necessarily fail under this standard.[1]

Thus, Rule 23's ascertainability requirement and the operative class definition

---

[1] A host of cases support the principle that the definition must connect the class to the claim, otherwise a class action is inappropriate.  For example, not everyone who buys a certain car is in a recall class.  See, e.g., Marcus, 687 F.3d at 591-94; Neale v. Volvo, No. 10-4407, 2017 U.S. Dist. LEXIS 201309, at *11-25 (D.N.J. Dec. 6, 2017).  Not every consumer who purchases a good or subscribes to a service is in a false advertising or consumer fraud class.  See, e.g., Oshana v. Coca-Cola Co., 472 F.3d 506 , 513-15 (7th Cir. 2006); Clark v. Bumbo Int'l Trust, No. 15 C 2725, 2017 U.S. Dist. LEXIS 137606, at *7-10 (N.D. Ill. Aug. 28, 2017); Chatman v. Sears, Roebuck & Co. Tools Mktg. & (In re Sales Practice Litig.), No. MDL-1703 et al., 2009 U.S. Dist. LEXIS 97594, at *9-16 (N.D. Ill. Oct. 20, 2009).  Not everyone who received a defective medical device is in a breach of warranty class.  See Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc., 321 F.R.D. 193, 214-15 (E.D. Pa. 2017).  Not every customer who has received a robocall is within a Telephone Consumer Protect Act class.  See Warnick v. Dish Network LLC, 301 F.R.D. 551, 557-59 (D. Colo. 2014).  Not everyone who resides in a specified geographic boundary is within a chemical contamination class. See, e.g., Wilson v. Consolidated Rail Co. (In re Paulsboro Derailment Cases), No. 12-784 et al., 2014 U.S. Dist. LEXIS 115542 (D.N.J. Aug. 20, 2014); Daigle v. Shell Oil Co., 133 F.R.D. 600, 602-03 (D. Colo. 1990).  See also generally Town of Lexington v. Pharmacia Corp. Solutia, No. 12-cv-11645, 2015 U.S. Dist. LEXIS 36814, at *19-23 (D. Mass. Mar. 24, 2015) (class definition overbroad where it did not "describe the harm alleged to have been suffered by class members" or "specify any alleged misconduct by the Defendants," and that while the issue of damages was a post-class determination, the plaintiffs were still required to "define the class . . . with some precision"); Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 804 (Cal. App. 2012) ("If . . . a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.").

must connect the putative class members to the relief sought.  Where, as here, there is no objective criteria connecting the putative class to the relief sought, the definition itself is flawed, the ascertainability requirement is not satisfied, and certification is improper.

Plaintiffs' current definition has several elements: (1) "All individuals that were based out of the New Jersey facilities," (2) "that performed truck driving and/or helper functions for the Defendants," (3) "from April 26, 2015 through to January 2017 out of the Edison Facility and from May 1, 2017 through to the present out of the Carteret Facility," (4) "who did not have direct contracts with either Defendant." Mov. Br. at 1.  The definition speaks only to a potential joint employment class, and completely ignores the relief sought:  unpaid overtime.  It contains no objective criteria to help discern which of the putative class members might have suffered an overtime violation, such as individuals performing deliveries "full-time" for Defendants, or those who worked more than 40 hours per week without receiving overtime.[2]

Days and hours worked in a workweek are the *sine qua non* of any overtime class action, irrespective of whether employment status is at issue.  See James v. Uber Techs. Inc., No. 19-cv-06462-EMC, 2021 U.S. Dist. LEXIS 14642, at *34

---

[2] This example should not be considered an admission that such refinements would solve Plaintiffs' ascertainability problem, but merely examples of common, objective criteria observed in overtime class actions.

(N.D. Cal. Jan. 26, 2021) (courts must look beyond the employment relationship and analyze class status for the underlying overtime claim); see also Wilson v. The La Jolla Grp., No. D077134, 2021 Cal. App. LEXIS 201, at *7 (Ct. App. Mar. 12, 2021) (holding that employer status is but one of two inquiries a court must undertake to determine class certification—the second being whether substantive liability is resolvable on a class-wide basis); Harris v. Med. Transp. Mgmt., No. 17-cv-01371 (APM), 2020 U.S. Dist. LEXIS 175335 (D.D.C. Sep. 24, 2020) (same); Arnold v. DirecTV, LLC, No. 4:10-CV-352-JAR, 2017 U.S. Dist. LEXIS 48472 (E.D. Mo. Mar. 31, 2017) (same); McCleery v. Allstate Ins. Co., 37 Cal. App. 5th 434, 451 (Ct. App. 2019) ("[w]ith respect to overtime . . . simply having the status of an employee does not make the employer liable for a claim for overtime compensation. . . .").

Plaintiffs may argue these cases are distinguishable because they address Rule 23 elements other than ascertainability. But such an argument misses the point. Plaintiffs must demonstrate an ascertainable class for their *overtime claims*, not just joint-employment status. As it stands, Plaintiffs class definition—and in turn, their "ascertainability" evidence—focuses exclusively on employment status and ignores how an unpaid overtime class can be ascertained on a class-wide basis.

Sleepy's, for example, illustrates how Plaintiffs' definition here is improperly overbroad. There, the plaintiffs moved to certify a class of "111 individuals who performed deliveries on a *full-time* basis and who drove one truck for Sleepy's." 974

12

F.3d at 474 (emphasis added).  The "full-time" designation in Sleepy's was critical because it prevented the alleged employees from accumulating hours worked for entities other than Sleepy's, the alleged employer owing overtime.

Here, no such limitation exists.  By not tailoring their class definition in a way that limits the class to those suffering overtime violations for which XPO LM and Bob's could be liable, Plaintiffs improperly include individuals who (a) did not work more than 40 hours per week for XPO LM and Bob's; (b) were not deprived of overtime in the first place; or (c) performed deliveries for XPO LM and Bob's for less than 40 hours per week.  Neither Defendant could be liable to any such persons.

The records demonstrate the Carriers had the sole discretion to determine how and when to assign delivery teams and were free to direct their delivery teams to perform deliveries for other freight forwarders (XPO LM's competitors).  See Dkt. No. 90, at 13, 22-23.  Because neither Bob's nor XPO LM determined the hours or days the Carriers' employees were required to work, it cannot be assumed blindly that each putative class member worked exclusively for XPO LM and Bob's for more than 40 hours during a given week.  The current class definition (and the record) does not support such a vast inferential leap.

If, for example, a driver worked one day per month for a Carrier performing deliveries of home goods sold by Bob's but worked twenty days performing deliveries tendered by another freight forwarder, neither Defendant would be liable

13

for any overtime that driver may have worked.  Alternatively, if a driver worked 60 hours for a Carrier in a given week, but only 20 of those hours corresponded with deliveries of home goods sold by Bob's and tendered by XPO LM, neither Defendant could be liable for that overtime.[3]

In sum, the proposed class definition does nothing to help this Court—or the parties for that matter—determine whether there is a reliable and administratively feasible way to ascertain who might have been shorted overtime on a class-wide basis.  Plaintiffs myopically define a potential joint employment class while ignoring altogether the crux of this action, *i.e.*, overtime.  Because Plaintiffs' flawed definition lacks the necessary elements by which an overtime class can be ascertained, Plaintiffs' motion should be denied.

## III.   A Few Spreadsheets and Rosters Do Not Establish A Reliable and Administratively Feasible Mechanism.

### a.   Plaintiffs Propose No "Mechanism."

This is not simply a joint employment case.  This is also an overtime case. Plaintiffs must do more than identify who might have performed deliveries during the class period; they must show there is a reliable and administratively feasible mechanism to determine who performed deliveries during the class period *and* could

---

[3] For this same reason, and as is discussed *infra*, Plaintiffs' request for class certification is misplaced because separating these part-time drivers (those who worked more than 40 hours a week but for different companies) would require intensive and prolonged factual inquiries into the practices of each and every one of the 47 Carriers and their drivers or helpers, during an approximately six-year period.

have suffered overtime violations.  To prove an overtime claim, Plaintiffs must show that they (and the class they seek to represent) worked over 40 hours in a week, in New Jersey, without being paid overtime.  N.J.S.A. 34:11-56a4.

Here, Plaintiffs attach or reference two general categories of information which they argue "far exceed[s] the standard for ascertainability." Mov. Br. at 1. Yet, they offer no explanation on how these documents relate to their overtime claims.  The first category of documents purportedly identifies only drivers or helpers.  The documents include seven "All Teams" spreadsheets, one "Background Check" form, and one "Identification Badge" drivers and helpers use to identify themselves.  Mov. Br. at 3, 6, 8.  The second category of documents purportedly shows which days the drivers or helpers performed delivery services based out of New Jersey Facilities, including select "Daily Spreadsheets" and emailed "CSI Rating" lists.

Merely pushing this inconsistent smattering of information before the Court, however, does not satisfy Plaintiffs' burden to show the information relied upon provides a reliable and administratively feasible mechanism for predicting class membership, *i.e.*, identifying those who are entitled to overtime relief, who are owed notice, and who are bound by the ultimate outcome.  See, e.g., James, 2021 U.S. Dist. LEXIS, at *7 (citations omitted); Daniel F. v. Blue Shield of Cal., 305 F.R.D. 115, 121 (N.D. Cal. 2014).  None of the records reflect "the *amount* and *extent* of

[the Plaintiffs' or putative class members'] work as a matter of just and *reasonable* inference." See Dkt. No. 100 at 22, quoting Sleepy's LLC, 974 F.3d at 470 (citation omitted).  Nor do Plaintiffs show *how* the information submitted demonstrates that the class is an ascertainable overtime class.

Plaintiffs argue they need only show that "class members *can* be identified" at the certification stage. (Mov. Br. at 9, quoting Byrd v. Aaron's, Inc., 784 F.3d 154, 163 (3d Cir. 2015)).  While Plaintiffs need not prove *liability* at the certification stage or "conclusively establish class membership" (City Select Auto Sales Inc. v. BMW of N. Am. Inc., 867 F.3d 434, 441 (3d Cir. 2017)), it remains Plaintiffs' burden to show *how* to determine class membership with evidence, not speculation.

Byrd expressly warned that a plaintiff may not "merely provide assurances" it will later meet Rule 23's standards, "nor . . . merely propose a method of ascertaining a class *without evidentiary support that the method will be successful*." Byrd, 784 F.3d at 163, quoting Carrera, 727 F.3d at 306, 311 (emphasis added). Plaintiffs offer nothing to demonstrate their method—*i.e.*, looking at lists—will successfully ascertain the putative class.  They do not provide a single example of *how* the offered documents can be used to determine whether the drivers and helpers were employed or otherwise engaged by the 47 Carriers, let alone establish the number of hours any class member spent delivering home goods sold by Bob's and tendered by XPO LM.

16

To be clear, Defendants do not contend Plaintiffs must *prove* each of the putative class members worked more than 40 hours at the certification stage. Rather, Defendants contend that Plaintiffs must at least explain how the evidence they submitted can be used to reliably and feasibly identify the putative class members who are due unpaid overtime accrued in connection with delivering home goods sold by Bob's and tendered by XPO LM. They have not done so. Attaching a fistful of documents, none of which suggest overtime violations, to a moving brief and claiming in conclusory fashion that the information satisfies the standard is insufficient. Because Plaintiffs have offered no mechanism at all to determine which drivers and helpers suffered overtime violations on a class-wide basis, class certification should once again be denied.

### b. Plaintiffs Have Not Demonstrated the Evidence Reliably Predicts Class Membership.

Plaintiffs' evidence does not reliably predict class membership—neither for joint employment nor overtime. It does not, as it must, support the conclusion that the information Plaintiffs submitted is capable of identifying drivers or helpers that: (1) were employed by one of the 47 Carriers with whom XPO LM contracted, (2) worked more than 40 hours per week delivering home goods sold by Bob's and tendered by XPO LM—*i.e.*, the touchstone for any hours worked at issue here—and (3) were not paid overtime premiums.

Plaintiffs' evidence does not even establish that the named Plaintiffs

17

themselves are members of the putative class, as written.[4]  How can this Court hold

that the evidence reliably predicts class membership in the absence of evidence

showing Plaintiffs themselves are class members?  Respectfully, it cannot.

Plaintiffs' evidence of "ascertainability" concerning their own experiences

shows only that: (1) Plaintiff Martinez performed deliveries in Keyport, New Jersey

on *one* day in the 2000-plus day class period and outside of New Jersey on another

day in the 2000-plus day class period (Mov. Br., Ex. A (Dkt. No. 132-3, at 5, 8));[5]

and (2) Plaintiffs Espinal, Torres, and Calderon performed deliveries on *one* day

each in the 2000-plus day class period, but none of which were in New Jersey (Mov.

Br., Ex. A (Dkt. No. 132-3, at 2, 8).[6]  That's it.  This is hardly the kind of evidence

_____

[4] See supra, pp. 10-13, noting that Plaintiffs' definition, as written, merely identifies individuals who may have been jointly employed by Defendants.  Plaintiffs' evidence, however, does not even establish that they were employed by any particular Carrier.  In addition, Plaintiffs provide sample data for April 2017, which is outside the defined class period.

[5] This is in stark contrast to Plaintiff Martinez's deposition testimony that he worked from May 2012 to June 11, 2018, with the exception of one month in 2015 or 2016 and "[m]aybe two or three" days when he had to attend court. Martinez Dep. (Dkt. No. 87-28) 13:8 to 18:6. The disparity between Martinez's testimony and the dearth of evidence from Plaintiffs highlights one of the core problems with Plaintiffs' Motion.  At the bare minimum, Plaintiffs' evidence should show that Martinez (or any named Plaintiff) worked some number of days per week delivering home goods sold by Bob's and tendered by XPO LM, and the number of hours worked per week.  The evidence does not come close.  Therefore, if this Court were to certify Plaintiffs' proposed class, it would need to assume (without proof) that every driver and helper was systemically denied overtime by the 47 Carriers and for similar amounts across the board based on Plaintiffs' say-so about how many hours *they* worked—without any way for XPO LM or the Court to verify or screen out false or exaggerated claims.  This is precisely the reason why the Third Circuit has held that a class cannot be "ascertain[ed] by potential members' say so" alone.  Marcus, 687 F.3d at 594; see also In re Tropicana Orange Juice Mktg. & Sales Practices Litig., No. 2:11-07382, 2018 U.S. Dist. LEXIS 979, at *38 (D.N.J. Jan. 22, 2018) (denying certification where the retail records relied on in support of ascertainability did not provide a way to verify the putative class members' claims); Stewart v. Beam Global Spirits & Wine, Inc., No. 11-5149, 2015 U.S. Dist. LEXIS 74116, at *31-42 (D.N.J. June 8, 2015) (denying certification where plaintiffs had no records to specifically identify the class members and did not adequately explain how fraudulent claim submissions would be screened out if affidavits from putative class members were allowed).

[6] The CSI reports Plaintiffs attach as Exhibit D also reflect that Plaintiff Martinez performed deliveries on February 21, 2016, June 23, 2016, April 5, 2017, September 17, 2017, and March 24, 2018, and that Plaintiff Calderon and worked on March 23, 2018, but the CSI reports show nothing about when, where, or how much they worked on those days, how many days that week they worked delivering home goods sold by Bob's and tendered by XPO LM, all of which are critical for an overtime claim.  Mov. Br., Ex. D (Dkt. No. 132-6), at 3-4, 6, 8-9.  Work performed on April 5, 2017 also is outside Plaintiffs' defined class period.

that proves by a "preponderance" that the information Plaintiffs proffer is capable of reliably ascertaining the identities of those who were both jointly employed by XPO LM and Bob's, and worked more than 40 hours a week delivering home goods sold by Bob's and tendered by XPO LM.

Juxtaposing Plaintiffs' evidence to what the plaintiffs submitted in Sleepy's highlights the abject inadequacy of the proof and logic at work in their arguments. Unlike here, Sleepy's involved only a single employer and plaintiffs established a class was ascertainable because they:

(1)   submitted actual evidence showing the class worked full time;

(2)   provided testimony from "a dozen" potential class members stating that they were required to work fulltime;

(3)   proved that the class performed delivery routes that ran about 10 hours per day (and because of that structural practice "drivers routinely worked more than 40 hours per week");

(4)   established on a class-wide basis the drivers did not perform work for another employer;

(5)   submitted driver pay statements for the class showing 5 to 6-day workweeks and deductions (a claim the drivers made there but is not at issue here); and

(6)   corroborated days worked with gate logs showing when a specific driver arrived and departed the facility at issue.

See Sleepy's, 974 F.3d at 479-80.  The Sleepy's plaintiffs demonstrated how all of this evidence tied together could be used to reliably predict who performed deliveries on a full-time basis and drove one truck for Sleepy's. Id. at 474.  In other words, the

<u>Sleepy's</u> plaintiffs properly connected each of the evidentiary dots tying their work and entitlement to overtime back to Sleepy's.

Here, Plaintiffs' smattering of documents do no such thing.  Plaintiffs' proffered evidence ignores the fact that there are 47 Carrier-employers, and it fails to "connect the dots" in such a way that would allow the Court to certify an overtime class for the following reasons.

*First*, contrary to what Plaintiffs suggest, the "Daily Spreadsheets" do not establish that the driver or helper listed worked on a given day or for any number of hours.  (Mov. Br., Ex. A.)  Plaintiffs did not show these documents to anyone at XPO LM or Bob's in deposition.  Plaintiffs did not ask what the documents represent, what they were used for, or what kinds of inferences may be drawn from these documents.  They did not ask for fear of revealing that these documents in no way show what Plaintiffs propose.  Even if this Court accepts Plaintiffs' unsupported inferences, Plaintiffs have not shown the so-called "Daily Spreadsheets" were actually generated daily, are accessible for each day in the class period, or have any other indicia of reliability.

*Second*, Plaintiffs have not demonstrated the "CSI Ratings" prove by a preponderance of evidence that a driver or helper listed on the daily rating worked on a given day or for any number of hours.  (Mov. Br., Ex. D.)  Just like the "Daily Spreadsheets", these "CSI Ratings" were never shown to anyone at XPO LM or

Bob's in deposition to find out what they represent, what inferences may be drawn from them, or how, if at all, they might help establish Plaintiffs' overtime claims. On their face, these documents do not demonstrate information adequate to evaluate whether a putative class member delivered home goods sold by Bob's and tendered by XPO LM on a given day, for any number of hours per week, or anything like that. Perhaps even more importantly, as previously noted, the record in this case makes clear that Carriers regularly swapped teams and substituted drivers and helpers in ways that render this kind of roster information inaccurate and unreliable for ascertaining this putative class—for purposes of joint employment or overtime.

*Third*, Plaintiffs have not shown the "All Teams" rosters prove by a preponderance of the evidence that the drivers and helpers listed were employed by one (or more) of the 47 Carriers or that the drivers and helpers did not have contracts with XPO LM. (Mov. Br., Exs. B & C.) In fact, there is nothing in the record from the 47 Carriers showing who worked for whom and when. Even assuming this information is accurate on any given day—which is speculative, at best—piecing together a roster for a 2000-plus day class period will be a logistical and evidentiary nightmare.

*Fourth*, Plaintiffs have not demonstrated the "Background Forms" or "ID Badges" prove by a preponderance of the evidence that the drivers and helpers identified on these forms: (1) ever worked a single day delivering home goods sold

21

by Bob's and tendered by XPO LM for delivery at the New Jersey Facilities, (2) were employed by any one of the 47 Carriers, and (3) did not have contracts with XPO LM. These documents merely show that one of the 47 Carriers had completed a background check (and drug screen in some instances) under the Delivery Service Agreements and the named driver or helper was available to perform delivery services for one of the 47 Carriers pursuant to the Delivery Service Agreement.

At its very best, Plaintiffs' evidence *may* be enough (which Defendants do not concede) to identify those drivers and helpers that *might have been jointly employed* by XPO LM and Bob's for some unspecified time during the class period. But there is absolutely no evidence of record that Plaintiffs can use the Background Forms or ID Badges to reliably identify the drivers and helpers who delivered home goods sold by Bob's and tendered by XPO LM, and who suffered overtime violations on a class-wide basis.

The Court should reject any effort by Plaintiffs to overcome these evidentiary problems by arguing Sleepy's allows them to use "reasonable inferences" to support their class certification arguments. See Sleepy's, 974 F.3d at 470. First, Sleepy's held that "where an *employer* has failed to keep records it was required to keep by law, employees can prove ascertainabilty . . . by producing sufficient evidence to define the proposed class as a matter of just and reasonable inference." Id. at 482 (internal quotations omitted) (emphasis added). No such inference would be just or

reasonable here.  Unlike in <u>Sleepy's</u>, neither Defendant has been determined to be Plaintiffs' employer.  That is a critical distinction.  In <u>Sleepy's</u> the only reason Plaintiffs could rely on an inference in the first place was because Sleepy's had previously been determined the employer.  The Third Circuit's expressed concern was avoiding the "employees who make up the class" "bear the cost of the *employer*'s faulty record keeping." <u>Id</u>. (emphasis added).  No such inference should be allowed here when employment status remains unproven, employment status is part of the question of whether class treatment is appropriate, and Plaintiffs admit the Carriers employed them but have not submitted any information from those employers.  Thus, the policy concerns at issue in <u>Sleepy's</u> are absent here, and Plaintiffs therefore cannot rely on any inferences that might arise from a legally established employment relationship.

Additionally, even if the inference was available, Plaintiffs cannot patch up this record and these claims with any just or reasonable inferences.  For a 2000-plus day class period, Plaintiffs proffer seven cherry-picked days of spreadsheets and five cherry-picked emails with survey scores (none of which show hours worked) and ask the Court to infer that every single driver and helper in that class period was both jointly employed and deprived of overtime.  This is not a "just and reasonable" inference; it is an enormous logical leap.

The inevitable result of leaping across this abyss is hundreds of mini-trials and evidentiary inquiries into each driver and helper in order to determine how many weeks they worked during the class period, how many hours they worked in each of those weeks, and how many of those hours were worked performing deliveries of home goods sold by Bob's and tendered to the Carrier by XPO LM.   All that evidence, and all those inquiries, would merely *identify the class*, irrespective of any future damage calculation.  Such an approach would defeat the ascertainability (and predominance) requirements of class certification.  The Court should thus decline Plaintiffs' invitation to certify a class based on a smattering of inconclusive spreadsheets, Plaintiffs' say-so, and unreasonable inferences.

### c. <u>Plaintiffs Have Not Demonstrated Administrative Feasibility</u>.

Even if Plaintiffs' evidence showed that a single Plaintiff or putative class member could have been jointly employed, Plaintiffs cannot (and have not) identified evidence that the drivers and helpers were somehow universally entitled to (or deprived of) overtime payments on a class-wide basis. Plaintiffs' piecemeal evidence is therefore administratively incapable of resolving who, of all of those possibly jointly employed, might be subject to an overtime violation.  <u>See</u> Manual for Complex Litigation (Fourth) § 21.222 (2004) (the Court must be able to identify the class members who are, *inter alia*, entitled to relief).  Many of this Court's cases acknowledge that, even outside of the wage-and-hour context, individualized

inquiries about who is entitled to relief render putative classes unascertainable (and also impacts the commonality and predominance inquiries).[7]

Unlike the typical overtime case that involves a single employer's policy or practice that universally applies to the class members (see e.g., Deangelis v. Bally's Park Place, Inc., 298 F.R.D. 188, 194-95 (D.N.J. 2014) (uncompensated pre-shift meetings)), this case involves 47 different employers, plus XPO LM and Bob's. Plaintiffs have not submitted evidence demonstrating that hours worked were tracked during any given work week or that schedules were standardized, and have not identified some other uniform treatment that resulted in overtime violations. Absent such evidence, Plaintiffs cannot demonstrate the administrative feasibility of ascertaining this class.

Simply put, even if a general list of potential class members can be ascertained here for joint employment purposes (which is at best what Plaintiffs have proffered), there will be countless factual inquiries and mini-trials about what days they worked, for how long, and whether the class members were unpaid for those overtime hours, whether and on what days they performed deliveries for others, *etc*.

---

[7] See generally Fenwick v. Ranbaxy Pharms, Inc., 353 F. Supp. 3d 315, 324-28 (D.N.J. 2018) (denying certification in class action over recalled medication because plaintiffs failed to show their proposed expert's methodology would be successful in identifying potential class members without excessive and individualized mini-trials); Neale, 2017 U.S. Dist. LEXIS 201309, at *22-24 (D.N.J. Dec. 6, 2017) (denying certification in class action over defective sunroofs because plaintiffs' "unwieldly" methodology required excessive individualized inquiries to determine former vehicle owners who may have sold their cars in private transactions); Wilson v. Consolidated Rail Corp. (In re Paulsboro Derailment Cases), No. 13-784 et al., 2014 U.S. Dist. LEXIS 115542, at *23-26 (D.N.J. Aug. 20, 2014) (denying certification in chemical contamination case because merely relying on a list of businesses within the affected zone was insufficient, and numerous individualized inquiries would be required to determine those businesses who "actually suffered income loss").

This Court's rulings in run-of-the-mill overtime cases are instructive.  In Adami v. Cardo Windows, Inc., 299 F.R.D. 68, 84-85 (D.N.J. 2014), this Court denied certification in a class action brought by window installers who alleged overtime violations because the differences in potential overtime among putative class members would require individualized fact-finding or mini-trials.  In pertinent part, the Court observed:

> Ascertaining the identity of class members will require inquiry into each member's independent contractor status, hours worked, level of control or autonomy, rate of pay, and status as a sole proprietor or incorporated business entity.  Therefore, Plaintiffs must identify a reliable and administratively feasible method for determining whether class members satisfy the class definition, and they have failed to do so on the present record.

Id. at 85.  Note that here, the inquiry is more complicated because the case is a joint employment case involving numerous employers, not an independent contractor misclassification case.

In Bobryk v. Durand Glass Mfg. Co., 50 F. Supp. 3d 637, 645-46 (D.N.J. 2014), this Court denied certification in a class action brought by glass manufacturing workers alleging wage-and-hour violations for uncompensated pre-shift and post-shift activities.  This Court held that the plaintiffs "have not met the ascertainability requirement of th[e] proposed class because they have not established that each employee is subject to the same pre-shift and post-shift routine or duties," and because "determin[ing] how much time each employee should be

26

compensated for pre- and post-shift activities" would require individualized inquiries not suitable for a class action and contrary to the ascertainability requirement. Id.

Other jurisdictions perform a similar analysis for evaluating the impact of individualized fact-finding on administrative feasibility in the context of Rule 23's ascertainability requirement (and usually in the context of predominance also as the two often go hand-in-hand). See, e.g., Harris v. Med. Transp. Mgmt., No. 17-cv-01371 (APM), 2020 U.S. Dist. LEXIS 175335, at *35-38 (D.D.C. Sept. 24, 2020) (questions of individualized proof predominate even where economic expert provided overtime analysis because the evidence could not "be generalized to the practice of over 80 different [medical transportation companies] and the potential underpayment of over 800 class members"); McCleery v. Allstate Ins. Co., 37 Cal. App. 5th 434, 451-54 (Cal. App. July 15, 2019) (explaining employee status and class liability are distinct, and failure of evidence to establish what work putative class members performed for each company, how long it took, how much each company paid, the expenses incurred for each company, or how wage statements were not provided, defeated predominance); Arnold v. DirecTV, No. 4:10-cv-352-JAR, 2017 U.S. Dist. LEXIS 48472, at *38-39 (E.D. Mo. Mar. 31, 2017) (finding that Plaintiffs' proposed damages methodology could not be performed on a class-wide basis because of the substantial variation among the hours technicians worked,

the amount of overtime they worked, and the efficiency in which they worked, and even averaging overtime hours through representative proof would result in a windfall for some and underpayment for others); <u>Spencer v. Beavex, Inc.</u>, No. 05-cv-1501, 2006 U.S. Dist. LEXIS 98565, at *26-28 (S.D. Cal. Dec. 15, 2006) (class certification denied because no reliable mechanism for determining "whether each driver actually drove a given route on a particular day").

The unifying logic in all of these cases demonstrates that when there is a need to perform individualized mini-trials to establish class membership for overtime claims, an administratively feasible and reliable mechanism does not exist.  Here, Plaintiffs have not demonstrated how they can both identify who is in the overtime class, and who, within that class, may be entitled to relief.  There simply is no evidence of record that the 47 Carriers universally did or did not pay overtime.  There is no other evidence available (other than Plaintiffs' own deposition testimony) that shows any of the class members worked uncompensated overtime.  Plaintiffs have not even attempted to quantify how many class members there are—whether the result of unwillingness or inability, and that's telling.  The proposed class simply is not ascertainable and therefore is not amenable to class treatment.

## IV. Defendants Reserve Their Right to Appeal.

A "renewed motion for class certification" must be briefed anew "so that all the rights and privileges attendant to a complete record are afforded to all parties."

Ltr. dated Nov. 24, 2020 (Dkt. No. 112 at 1-2), citing <u>Sleepy's LLC</u>, 974 F.3d at

470.  To that end, Defendants objected to briefing only ascertainability on the

grounds that failing to brief class certification anew may deprive Defendants of the

opportunity to seek interlocutory review of a complete Rule 23 record under Rule

23(f).  <u>Id</u>.  Ultimately, the Court concluded that "to the extent [Defendants] want to

make it clear in [their] papers that [they] disagree for purposes of an interlocutory

appeal, that's fine with [the Court]," and that it would "note it in any subsequent

decision."  Hr'g Tr., Nov. 30, 2020 (Dkt. No. 126, at 8-9).

Defendants wish to do so here.  While Defendants agree with the Court's

findings concerning the applicability of the joint employment test in this case, and

with the Court's prior ruling concerning Plaintiffs' lack of proof regarding

ascertainability, they disagree with the Court's analysis concerning commonality,

typicality, predominance, and superiority.

Following the Court's decision, a Rule 23(f) appeal was unavailable to

Defendants because the Court denied class certification.  There was no reason to

appeal, and an appeal would most likely have been unripe anyway.  If a winning

party was required to appeal every winning decision because of some non-

dispositive defects, the Circuit Courts would have to hear every case because even

winners would be required to appeal.  The better policy is to give Defendants an

opportunity to make a Rule 23(f) request for interlocutory appeal in the event this

Court reverses its earlier opinion and grants class certification. Thus, should the Court certify the Class because Plaintiffs met the ascertainability requirement, Defendants respectfully request that the Court adopt and incorporate its prior decision in full so that the full record (and issues) under Rule 23 may be preserved for a Rule 23(f) interlocutory appeal.

## CONCLUSION

For all of these reasons, Plaintiffs' Motion for Class Certification on the Issue of Ascertainability and request to modify the Court's prior Order denying class certification, should be denied.

Dated:  April 14, 2021                    Respectfully Submitted,


/s/ Adam L. Lounsbury                      /s/ Michael T. Maroney

JACKSON LEWIS P.C.                         HOLLAND & KNIGHT LLP
James J. Panzini                           Duvol M. Thompson
766 Shrewsbury Avenue                      31 West 52nd Street
Tinton Falls, NJ 07724                     New York, NY 10019
732-532-6148                               212-513-3200
Fax: 732-842-0301                          Fax: 212-385-9010
james.panzini@jacksonlewis.com             duvol.thompson@hklaw.com

Adam L. Lounsbury (*pro hac vice*)         Michael T. Maroney (*pro hac vice*)
701 East Byrd Street, 17th Floor           10 St. James Ave.
Richmond, VA 23219                         Boston, MA 02116
804-649-0404                               617-305-2029
Fax: 804-649-0403                          Fax: 617-523-6850
adam.lounsbury@jacksonlewis.com            michael.maroney@hklaw.com

*Attorneys for XPO Last Mile, Inc.*        *Attorneys for Bob's Discount*
                                           *Furniture, LLC*

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of April 2021, I served copies of the

foregoing on the recipients below via the Court's ECF system.

| PLAINTIFFS | BOB'S DISCOUNT FURNITURE, LLC |
|---|---|
| THE SATTIRAJU LAW FIRM, P.C.<br>Ravi Sattiraju<br>116 Village Blvd., Suite 200<br>Princeton, NJ 08540<br>609-799-1266<br>Fax: 609-799-1267<br>rsattiraju@sattirajulawfirm.com<br><br>*Attorneys for Plaintiffs and the putative class* | HOLLAND & KNIGHT LLP<br>Sean C. Sheely<br>Duvol M. Thompson<br>31 West 52nd Street<br>New York, NY 10019<br>212-513-3200<br>Fax: 212-385-9010<br>sean.sheely@hklaw.com<br>duvol.thompson@hklaw.com<br><br>Michael T. Maroney (*pro hac vice*)<br>10 St. James Ave.<br>Boston, MA 02116<br>617-305-2029<br>Fax: 617-523-6850<br>michael.maroney@hklaw.com<br><br>*Attorneys for Bob's Discount Furniture, LLC* |
| Dated: April 14, 2021 | */s/ James J. Panzini*<br>JACKSON LEWIS P.C.<br>James J. Panzini<br>766 Shrewsbury Avenue<br>Tinton Falls, NJ 07724<br>732-532-6148<br>Fax: 732-842-0301<br>james.panzini@jacksonlewis.com |

|  | Adam L. Lounsbury (*pro hac vice*)<br>701 East Byrd Street, 17th Floor<br>Richmond, VA 23219<br>804-649-0404<br>Fax: 804-649-0403<br>adam.lounsbury@jacksonlewis.com<br><br>*Attorneys for XPO Last Mile, Inc.* |