**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OMAR A. ESPINAL, FREDY O. CARBAJAL, ARLEN Y. MARTINEZ, OSCAR RENE CALDERON ROMERO and WELLINGTON TORRES, on behalf of themselves and all other similarly situated persons,<br><br>*Plaintiffs*,<br><br>v.<br><br>BOB'S DISCOUNT FURNITURE, LLC and XPO LAST MILE, INC.,<br><br>*Defendants*. | Civil Action No. 17-02854<br><br>OPINION |

**John Michael Vazquez, U.S.D.J.**

This putative class action arises from allegations that Defendants failed to pay overtime to Plaintiffs. Plaintiffs Omar A. Espinal, Fredy O. Carbajal, Arlen Y. Martinez, Oscar Rene Calderon Romero, and Wellington Torres, on behalf of themselves and all others similarly situated, assert claims against Defendants Bob's Discount Furniture ("Bob's") and XPO Last Mile, Inc. ("XPO") for violations of the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq.*; the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.*; and unjust enrichment. D.E. 122. Presently pending is Plaintiffs' renewed motion for class certification on their NJWHL claim. D.E. 155. Plaintiffs seek certification of the following class:

> All individuals that were based out of Defendants' Edison and Carteret, New Jersey warehouses that performed truck driving and/or helper functions for the Defendants from April 26, 2015 through to January 2017 out of the Edison Facility and from May 1,

> 2017 through to the present out of the Carteret Facility, who did not have direct contracts with either Defendant, and who worked more than forty hours per week performing deliveries for Defendants.

In addition to class certification, Plaintiffs also seek appointment of the named Plaintiffs as Class Representatives and appointment of Ravi Sattiraju, Esq. of Sattiraju & Tharney, LLP as Class Counsel pursuant to Fed. R. Civ. P. 23(g). D.E. 155-24. The Court considered the parties' submissions[1] and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons, Plaintiffs' motion is **GRANTED**.

## I. BACKGROUND[2]

Defendant Bob's is a limited liability company that sells furniture. TAC ¶¶ 19-20. Defendant XPO is a "third-party provider of end-to-end goods management and logistics services for companies such as Bob's." *Id.* ¶ 22. Named Plaintiffs are five individuals who allegedly worked as drivers and helpers for Defendants for varying periods between May 2012 and June 2018. *Id.* ¶¶ 14-18, 28.

Plaintiffs allege that Bob's and XPO used a distribution facility in Edison, New Jersey, which moved to Carteret, New Jersey in or around January 2017 (collectively, the "Facilities"). *Id.* ¶ 23. At the Facilities, XPO provided management and logistic services to Bob's. *Id.* Drivers delivered goods from the Facilities to Bob's customers, and helpers traveled with drivers to assist with deliveries. *Id.* ¶ 25.

---

[1] The submissions consist of Plaintiffs' motion, D.E. 155 ("Br."); Defendants' joint opposition, D.E. 158 ("Opp."); and Plaintiffs' reply, D.E. 161 ("Reply").

[2] The facts are derived from Plaintiffs' Third Amended Complaint, D.E. 122 ("TAC"); Defendant XPO's Answer to the TAC, D.E. 123 ("XPO Ans."); and Defendant Bob's Answer to the TAC, D.E. 124 ("Bob's Ans."). The facts were previously set forth in the Court's prior opinion addressing Plaintiffs' motions for class certification, D.E. 139, and are incorporated herein.

The parties contest the nature of their relationship—specifically, they disagree as to whether Bob's and XPO were employers of Plaintiffs and the putative class members. According to Plaintiffs, Bob's and XPO were their employers, as defined by the NJWHL and NJWPL. *Id.* ¶¶ 26-27. Plaintiffs allege that Bob's entered into business relationships with XPO "to conceal the fact that it had an employer-employee relationship with the Plaintiffs," which was evidenced by the control Bob's exerted over "the manner and means in which the Plaintiffs and all Class Members performed their duties." *Id.* ¶¶ 29-30. Plaintiffs also allege that XPO employed them as evidenced by XPO's control over their work. *Id.* ¶ 31. Specifically, Plaintiffs indicate that they "reported to work at the [] Facilities for Bob's and/or XPO [], took instruction from Bob's and XPO [] employees, communicated with Bob's and XPO [] employees while delivering their routes during the workday and handled paperwork related to or pertaining to Bob's and/or XPO," and that both Bob's and XPO had the authority to reprimand and terminate Plaintiffs. *Id.* ¶¶ 30-31.

Defendants deny that they were Plaintiffs' employers. Bob's Ans. ¶ 26; XPO Ans. ¶ 27. According to Bob's, it contracted with XPO to arrange for delivery services, XPO tendered the freight to motor carriers (the "Carriers"), and the Carriers employed or otherwise contracted with drivers and helpers to perform the deliveries. Bob's Ans. ¶ 25. XPO similarly claims that it contracted with the Carriers to perform delivery services for Bob's and that the Carriers employed or otherwise contracted with drivers and helpers to perform these deliveries. XPO Ans. ¶¶ 23, 25, 32. Defendants note that Plaintiffs' previous pleadings identified the Carriers with whom XPO contracted—ABC Corps. and Jane and John Does—as Plaintiffs' employers or joint employers. D.E. 1 ¶¶ 15, 21; D.E. 64 ¶¶ 20, 26; D.E. 74 ¶¶ 18, 24. The Third Amended Complaint does not name ABC Corps. or Jane and John Does as Defendants. D.E. 122.

Plaintiffs assert that they are not independent contractors and are not exempt under the NJWHL. *Id.* ¶¶ 33-34. Plaintiffs further allege that they "routinely worked far in excess of forty (40) hours per week for Defendants and were not paid 1.5 times their hourly rate or 1.5 times the minimum wage rate" for the excess hours. *Id.* ¶ 35. As a result, Plaintiffs argue, they were denied legally required compensation and/or overtime pay, and the wages they were paid included "various deductions, charges and/or expenses" that did not benefit them, such as "the cost of liability and workers' compensation insurance [and] various performance-based penalties and lease payments." *Id.* ¶¶ 36-37. Defendants deny these allegations. XPO Ans. ¶¶ 33-37; Bob's Ans. ¶¶ 33-37. Defendants further note that because Plaintiffs' compensation was handled by the Carriers, Defendants lack sufficient knowledge as to whether Plaintiffs were paid overtime pay and Plaintiffs' payment deductions. XPO Ans. ¶¶ 35, 37; Bob's Ans. ¶¶ 35, 37.

On April 26, 2017, Plaintiff Espinal filed a class action Complaint, alleging three counts: (1) violations of the NJWPL; (2) violations of the NJWHL; and (3) unjust enrichment. D.E. 1. On December 10, 2018, Plaintiff filed a First Amended Complaint that added five named Plaintiffs. D.E. 64. XPO and Bob's filed Answers on December 21, 2018. D.E. 65, 66. Plaintiffs filed a Second Amended Complaint on June 3, 2019 which removed one named Plaintiff and adjusted the class definition. D.E. 74. Defendants XPO and Bob's filed their Answers on June 17, 2019. D.E. 75, 76. The parties then commenced class-related discovery, which closed on January 31, 2020. D.E. 50, 83. Plaintiffs filed the Third Amended Complaint on January 21, 2021, which is the operative pleading. D.E. 122. XPO and Bob's filed their Answers on February 4, 2021. D.E. 123, 124.

On October 14, 2020, the Court issued an opinion and order denying Plaintiffs' first motion for class certification without prejudice. D.E. 100, 101. The Court found that Plaintiffs had

adequately established the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. D.E. 100. The Court also found that Plaintiffs had satisfied the predominance and superiority requirements of Rule 23(b). *Id*. The Court concluded, however, that Plaintiffs had not met the ascertainability requirement because despite "demonstrat[ing] methods to satisfy the ascertainability requirement," Plaintiffs failed to "provide[] any evidence of the actual records or data so that their stated methods can actually be employed." *Id.* at 22. Specifically, the Court noted that delivery manifests and/or customer feedback data could be used "to prove which drivers and helpers worked on any given day," but this data was absent from the record. *Id.* The Court also observed that "Plaintiffs may have ways to obtain the necessary data to show that the class can be ascertained in an administratively feasible way," including potentially subpoenaing the Carriers for records showing employee names as well as days and hours worked. *Id.* The Court found that, "if neither Defendants nor the Carriers have such records, Plaintiffs can meet their burdens of proof by 'produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (quoting *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 470 (3d Cir. 2020) (alteration in original)). Because Plaintiffs had not satisfied the ascertainability requirement, the Court denied the motion for class certification without prejudice.

Plaintiffs renewed their motion for class certification, which the Court again denied without prejudice. D.E. 139, 140. The Court, pursuant to its "inherent authority to redefine a proposed class," *Portillo v. National Freight, Inc.*, 336 F.R.D. 85, 92 (D.N.J. 2020), modified the class definition "to limit the putative class to individuals who worked more than 40 hours per week during the class period[.]" D.E. 139 at 13. The proposed class definition above reflects the definition set forth by the Court. *Id.* The Court then noted that "[t]he ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective

5

criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* (citing *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015)). While the new proposed class met the "objective criteria" requirement, Plaintiff had not "met their burden of proving, by a preponderance of the evidence, that there is a reliable and administratively feasible mechanism for determining class membership." *Id.* at 21 (citing *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017)).

Before the present motion was filed, Magistrate Judge James B. Clark, III ordered certain class-based discovery. D.E. 144, 153. The parties were informed that there would be "no further class-based discovery." *Id*. Plaintiffs then filed the present motion for class certification, which is limited to the only remaining issue: ascertainability. D.E. 155. In support of the present motion, Plaintiffs submit the following documents to demonstrate that the proposed class is ascertainable:

(1) Excerpts from the depositions of Carmen Diaz (D.E. 155-3), Roy Low (XPO's corporate representative) (D.E. 155-4, 155-12, 161-6), Garrett Bonsaint (Bob's corporate representative) (D.E. 155-5, 155-6, 155-9, 161-7), Andrew Solano (D.E. 155-10), Issani Ballard (D.E. 155-14), Gerard Condon (XPO's corporate representative) (D.E. 155-15), Wellington Torres (D.E. 155-16, 161-12), Arlen Y. Martinez (D.E. 155-17, 161-10), Fredy O. Carbajal Flores (D.E. 155-18, 161-9), Oscar R. Calderon Romero (D.E. 155-19, 161-11), Omar. A. Espinal (D.E. 155-20, 161-8), and James Boles (D.E. 155-21);

(2) An email from Bob's counsel to Plaintiffs' counsel (D.E. 155-7);

(3) Representative sample spreadsheets containing DispatchTrack data (D.E. 155-8) and SAP data (D.E. 155-11) produced by Bob's;

(4) Documents produced by XPO reflecting Contract Logix data (D.E. 155-13);

(5) Subpoenas issued by XPO to the Carriers (D.E. 161-3, 161-4);

(6) A "Report of Governor Murphy's Task Force on Employee Misclassification" (D.E. 161-5).

## II. LEGAL STANDARDS

### A. New Jersey Wage and Hour Law

Plaintiffs seek class certification only on their NJWHL claim. The NJWHL "establishes not only a minimum wage but also an overtime rate for each hour of work in excess of forty hours in any week for certain employees. It does not prescribe the minimum wage or overtime rate payable to independent contractors." *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 458 (N.J. 2015) (internal citation omitted). Under the NJWHL, an "employee" is defined as "any individual employed by an employer." N.J.S.A. § 34:11-56a1(h). The law defines an "employer" as "any individual, partnership, association, corporation, and the State and any county, municipality, or school district in the State, or any agency, authority, department, bureau, or instrumentality thereof, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." N.J.S.A. § 34:11-56a1(g).

### B. Federal Rule of Civil Procedure 23

Federal Rule of Civil Procedure 23 governs class actions. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). A renewed motion for class certification should be treated "like any other for class certification" under "the usual Rule 23 standard." *Hargrove*, 974 F.3d at 476 (internal quotation omitted). "[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus*, 687 F.3d at 590 (citing Fed. R. Civ. P. 23(a)-(b)). As noted, in its previous opinions, D.E. 100, 139, the Court ruled on the four requirements of Rule 23(a) as well as predominance and superiority under Rule 23(b)(3).

In addition to the Rule 23(a) and Rule 23(b)(3) analysis, courts must "clearly define[] the parameters of the class and the claims to be given class treatment," and find that the class is

"objectively ascertainable." *Marcus*, 687 F.3d at 591. "A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163.

Pursuant to Rule 23(c)(1)(A), a court "must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). The decision to certify a class or classes is left to the discretion of the court. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009). "[T]he requirements set out in Rule 23 are not mere pleading rules." *Marcus*, 687 F.3d at 591 (quoting *Hydrogen Peroxide*, 552 F.3d at 316). "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Id.* "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *Hydrogen Peroxide*, 552 F.3d at 318.

The Third Circuit emphasizes that "'[a]ctual, not presumed[,] conformance' with Rule 23 requirements is essential." *Marcus*, 687 F.3d at 591 (alterations in original) (quoting *Hydrogen Peroxide*, 552 F.3d at 326). "To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and arguments put forth." *Id.* (citation omitted). This "rigorous analysis" requires a district court to "'resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action.'" *Id.* (quoting *Hydrogen Peroxide*, 552 F.3d at 307). Therefore, a district court "may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" *Hydrogen Peroxide*, 552 F.3d at 320 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001)).

### III. ANALYSIS

As noted above, "[t]he ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and

administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd*, 784 F.3d at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). A plaintiff need not be able to identify all class members at class certification; rather, "a plaintiff need only show that class members *can* be identified." *Id.* (emphasis in original) (internal quotation omitted). Moreover, the "[p]laintiff need not, at the class certification stage, demonstrate that a single record, or set of records, *conclusively establishes class membership*." *City Select*, 867 F.3d at 441 (emphasis added) (citing *Byrd*, 784 F.3d at 163). If, however, "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593. "As with all of the Rule 23 requirements, a court must rigorously analyze the proposed class to determine how the class is to be ascertained." *Afzal v. BMW of N. Am., LLC*, No. 15-8009, 2020 WL 2786926, at *8 (D.N.J. May 29, 2020) (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013)).

Ascertainability fulfills three objectives. First, ascertainability "eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members." *Marcus*, 687 F.3d at 593 (citation omitted). Second, "it protects absent class members by facilitating the 'best notice practicable'" in a Rule 23(b)(3) action. *Id.* (citation omitted). Finally, "it protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Id.* (citation omitted).

In its previous Opinion, the Court found that the first prong of ascertainability was met.[3] D.E. 139 at 15. Thus, the only remaining hurdle to class certification is the second prong, which

---

[3] Defendants now argue that "the class is not defined with reference to objective criteria." Opp. at 16-18. For the reasons set forth in the Court's prior Opinion, this argument is rejected. D.E. 139 at 14-15.

requires Plaintiffs to prove by a preponderance of the evidence that "there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd*, 784 F.3d at 163 (quoting *Hayes*, 725 F.3d at 355). The parties' dispute hinges on the class definition's forty-hour requirement—*i.e.*, whether Plaintiffs have demonstrated that there is an objective and administratively feasible method of determining which employees worked more than forty hours in a workweek during the class period.

Plaintiffs note, and Bob's corporate representative agrees, that data maintained by Defendants in two programs[4]—Road Net and DispatchTrack—shows the time that drivers recorded leaving the Facility to begin their route, and the time at which they recorded returning to the Facility. Br. at 12; D.E. 155-6 176:16-25, 181:6-16. Plaintiffs also claim that SAP data can be used to identify the helper who accompanied the driver for each delivery route. Br. at 13-14. The final data source, Contract Logix, can be used to determine the names and other identifying information of each driver and helper identified preliminarily through Road Net, DispatchTrack, and SAP. Br. 15-16; D.E. 155-13.

Plaintiffs point out that the data mentioned above does not encompass all work performed by drivers and helpers. Br. at 16. Plaintiffs claim that drivers and helpers "arrived at Defendants' facilities and performed a substantial amount of work prior to leaving for their deliveries," and "performed work after returning from their deliveries but before leaving Defendants' facilities for the night." *Id.* at 17-18. Defendants' corporate representatives and employees agree that drivers and helpers worked both before leaving for their route and after returning from their route. *See, e.g.*, D.E. 155-14 at 27:7-9; 155-10 at 41:1-5; 155-15 at 65:2-23, 66:22-24; 155-21 at 21:19-24;

---

[4] The Court notes that the need to "cross-reference . . . voluminous data from multiple sources" does not prevent a finding of ascertainability. *Kelly v. RealPage Inc.*, 47 F.4th 202, 224 (3d Cir. 2022).

155-14 at 81:21-82:2. Because the time before leaving the facility for a route and after returning to the facility from a route are not captured by the data sources noted above, Plaintiffs rely solely on record testimony from Defendants' employees and corporate representatives, and the named Plaintiffs to estimate these additional hours.

Defendants argue that the class is not ascertainable because "the records consulted are unreliable, uncorroborated, and their proposed method does not avoid the need to conduct mini-trials and individual fact-finding to determine who worked when and for how long." Opp. at 18. More specifically, Defendants first argue that Plaintiffs' evidence does not demonstrate what constituted the Plaintiffs' "workweek." Opp. at 19. New Jersey law states that "[o]vertime . . . pay shall be computed on the basis of each workweek standing alone." N.J.A.C. § 12:56-6.2(a). An employee is entitled to overtime pay "for each hour of working time in excess of 40 hours in any workweek." N.J.A.C. § 12:56-6.4(a). New Jersey law further states that "[a] workweek shall be a regularly recurring period of 168 hours in the form of seven consecutive 24-hour periods," that "[the] workweek need not be the same as the calendar week and may begin any day of the week and any hour of the day," and that "[t]he workweek shall be designated to the employee in advance." N.J.A.C. § 12:56-5.4(a)-(c). Because "there is no evidence in the record concerning what the 59 Carriers considered to be the applicable workweek for their delivery teams," Defendants argue that "Plaintiffs have not and cannot establish a proper method for determining which of the Carrier's delivery teams worked more than 40 hours in a workweek[.]" Opp. at 20.

Defendants place blame for the failure to define the workweek on the Carriers, who they claim are Plaintiffs' true employers. Bob's Ans. ¶ 25; XPO Ans. ¶¶ 25, 32. Plaintiffs, however, argue that subpoenas to the Carriers "did not produce any documents in which a workweek was

11

formally defined under the NJWHL" and that Defendants should not be allowed to benefit from their own failure to define the workweek as required by law. Reply at 14 n.5 & 14-15.

The Third Circuit has held that "where an employer's lack of records makes it more difficult to ascertain members of an otherwise objectively verifiable class, the employees who make up that class should not bear the cost of the employer's faulty record keeping." *Hargrove*, 974 F.3d at 470. In such instances, a plaintiff may "prove ascertainability by producing 'sufficient evidence' to define their proposed class 'as a matter of just and reasonable inference.'" *Id.* (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016)). Thus, Defendants cannot avoid class certification by failing to define the workweek. *See Lewis v. Gov't Emps. Ins. Co.*, No. 18-5111, 2022 WL 819611, at *11 (D.N.J. Mar. 18, 2022) ("Information gaps here are of [defendant]'s own making, so we are not inclined to deny class certification on this basis."). Allowing an employer[5] to defeat class certification on overtime wage claims simply by failing to establish and document their "workweek," as required by New Jersey law, "would be creating an incentive for employers not to keep records and thus avoid potential lawsuits," which Third Circuit precedent seeks to avoid. *Hargrove*, 974 F.3d at 483. Like the Third Circuit, this Court endeavors not to "craft[] a vast loophole to class certification," *id.*, and thus will construe Plaintiffs' workweek, as a matter of just and reasonable inference, to be Monday to Sunday.

Defendants next argue that Plaintiffs' data does not reliably establish *who* actually performed recorded work on any given day. Opp. at 20-23. Defendants claim that "there is no evidence demonstrating that the delivery team that ultimately performed the day-of-delivery was

---

[5] To be clear, the Court is well aware that Defendants vigorously contest that they were, in fact, employers. The Court is not finding for purposes of adjudication that Defendants were employers. That issue is to be resolved at trial. If the factfinder does not determine that Defendants were employers, then all other class issues will be moot.

the team that was recorded in SAP, Road Net or DispatchTrack; indeed, the evidence demonstrates that Carriers regularly made changes to the offered or accepted rosters of delivery personnel, which may or may not have been communicated to XPO [] or ultimately recorded with Bob's in their software[.]" Opp. at 21.

The Third Circuit in *Hargrove* indicated that a defendant claiming their own records "should be disregarded because it is unclear that they are accurate" employs an "audacious[]" method of attempting to avoid class certification. *Hargrove*, 974 F.3d at 481. This is the argument that Defendants are using. Moreover, their argument contradicts the deposition testimony of their corporate representatives. Bob's corporate representative, Garrett Bonsaint, agreed that "Bob's has no basis to say that what the records reflect who was driving and helping on a particular day would be inaccurate." D.E. 161-7 at 135:2-6. XPO's corporate representative, Roy Low, testified similarly, as follows:

> Q: And to your knowledge XPO kept accurate records?
>
> A: To my knowledge XPO kept accurate records.
>
> Q: Including of who the drivers and helpers were performing the actual route on a given day, correct?
>
> A: In general on any given day XPO would 100 percent have no reason not to believe that the carrier sent the drivers and helpers that were listed on the offer sheet and if we did know of a discrepancy we would notify Bob's or update the record, yes.
>
> Q: That was the practice during the entire class period at the Edison and Carteret facility, correct?
>
> A: It was a practice to take -- that there was no reason not to believe that the carriers were sending who they said they were sending. If we found somebody different that we knew of, it was our practice to update the record.
>
> Q: And that was true during the entire class period, April 2015 to the present, correct?

>           A: That is, that is true.

D.E. 155-4 at 49:16-50:10.  Given the testimony from Bob's and XPO's corporate representatives, who were in agreement that there is no reason to believe that the records are inaccurate as to *who* performed certain deliveries, Defendants' assertion that the data is not reliable on this point falls short.

Defendants next argue that the data does not "reliably establish the *number of hours worked*" by a given driver or helper.  Opp. at 23-28 (emphasis added).  Defendants point to several examples of "obvious inaccuracies" in the data, such as where the data reflects that "[a] delivery team traveled 190.2 miles in 1.5 hours," that "[a] delivery team completed 15 deliveries in 19 seconds," or that the total recorded duration of a route was zero minutes.  *See* Opp. at 24-25, D.E. 158-3 ¶ 13.  But the Court is not aware of, and Defendants have not pointed to, any authority demanding perfection before data may be relied upon for class certification.  Moreover, locating a handful of errors in a data set containing thousands of entries does not demonstrate that the data is wholly unreliable for purposes of class certification.  And to the extent the records contain "obvious inaccuracies," the Court will not allow Defendant to benefit from their own claimed failure to keep accurate records.  D.E. 100 at 22 (citing *Hargrove*, 974 F.3d at 483) ("[I]f neither Defendants nor the Carriers have [accurate employment] records, Plaintiffs can meet their burdens of proof by 'produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'").

Defendants also take issue with Plaintiffs' method of determining the time worked before and after a route through testimony and estimation, claiming that such testimony is "self-serving" and inconsistent.  Opp. at 28-33.  Plaintiffs acknowledge that there are no "records relating to the class members' work time before leaving the [F]acilities and after returning from their deliveries,"

Br. at 17 n.6, and argue that such time "can be determined as a matter of inference based on Defendants' own employees' estimations of such time as well as Plaintiffs' own testimony," *id.* at 20.

All parties appear to agree that *some* unrecorded work was performed both prior to the driver and helper leaving for the route and after their return. Plaintiffs rely jointly on the named Plaintiffs' testimony and testimony from Defendants' corporate representatives and employees, which appear to universally agree that drivers and helpers performed unrecorded work both before and after their routes. *See* Br. at 17-18. Given the corroboration by Defendants' corporate representatives and employees, Plaintiffs have not proposed a "method that would amount to no more than ascertaining by potential class members' say so," which the Third Circuit has cautioned against. *Marcus*, 687 F.3d at 594 ("[S]imply having potential class members submit affidavits that their [roll flat tires] have gone flat and been replaced may not be 'proper or just.'").[6]

What is uncertain is exactly how much uncompensated work was performed. But the *exact* amount of time worked by a putative class member is largely a question for the merits stage, not class certification. *Cf. Tyson Foods*, 577 U.S. at 454 (holding in an FLSA case that a class was properly certified on the basis of representative, statistical evidence of the average time spent donning and doffing protective gear while noting that "[t]o be entitled to *recovery*, however, each employee must prove that the amount of time spent donning and doffing, when added to his or her regular hours, amounted to more than 40 hours in a given week" (emphasis added)).

---

[6] The Court also notes that the current case is materially different from the circumstances in *Marcus*. *Marcus* concerned flat tires, which the defendants had no opportunity to corroborate. 687 F.3d at 593-94. Here, Defendants were aware that drivers and helpers worked before and after actual deliveries. Thus, Defendants could have implemented a system to account for this time but did not do so.

15

At this stage, it is sufficient if Plaintiffs have a reasonable estimate of the additional time spent before and after deliveries, which will allow an objective review of an employees' hours to determine eligibility for class membership.[7] *Cf. id.* ("Reasonable minds may differ as to whether the average time [plaintiff's expert] calculated is probative as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury. The District Court could have denied class certification on this ground only if it concluded that no reasonable juror could have believed that the employees spent roughly equal time donning and doffing."). XPO's employee and corporate representative testified that drivers would generally arrive at the Facility between 5:30 and 6:00 a.m.[8] D.E. 155-10 at 41:1-5; D.E. 155-15 at 65:6-8. XPO's employee and corporate representative also estimated that drivers and helpers typically worked between thirty and sixty minutes after returning from their route. D.E. 155-21 at 21:19-24; D.E. 155-14 at 81:21-25. XPO's agreement on these points presents an administratively feasible means of determining class membership.

Defendants also argue that the Contract Logix data is "irrelevant" because it "contains *no* information about when or for how long any individual performed delivery services." Opp. at 33

---

[7] The Court recognizes the possibility that an employee will be admitted to the class based on the addition of the estimated time, but otherwise would not have met the forty-hour requirement. It is further possible that this hypothetical employee, in fact, did not work enough hours before and after the routes to meet the forty-hour requirement, and thus will not be entitled to recover. However, "a class can still be ascertainable even if it may be slightly overbroad." *Hargrove*, 974 F.3d at 481 (citing *Byrd*, 784 F.3d at 168-69); *see also City Select*, 867 F.3d at 441 ("Plaintiff need not, at the class certification stage, demonstrate that a single record, or set of records, *conclusively* establishes class membership." (emphasis added) (citation omitted)).

[8] Issani Ballard, a former XPO employee, testified that XPO "*asked* that the delivery teams be [at the Facility] at 5 a.m." D.E. 155-14 at 27:7-9 (emphasis added). But XPO's corporate representative, Gerard Condon, testified, more pertinently, that "drivers *would arrive* at a time . . . between 5:30 and 6 o'clock." D.E. 155-15 at 65:6-8. The 5:30 to 6:00 a.m. time frame for *arrival* was corroborated by another XPO employee, Andrew Solano, who testified that drivers "would generally *come in* . . . [a]round 5:30 . . . 5:30, 6 o'clock." D.E. 155-10 at 41:1-5 (emphasis added).

16

(emphasis in original).  Plaintiffs do not seek to use this data to establish time worked.  Instead, Plaintiffs rely on this data, which contains mailing and email addresses, birth dates, and social security numbers to "identify" and "permit reliable notice to potential class members."  Br. at 20.

In sum, the Court finds that Plaintiffs have "met their burden of proving, by a preponderance of the evidence, that there is a reliable and administratively feasible mechanism for determining class membership."  D.E. 139 at 21 (citing *City Select*, 867 F.3d at 441); *Byrd*, 784 F.3d at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).  Review of the DispatchTrack and Road Net data will identify the time at which a driver recorded leaving the Facility and returning to the Facility.  The SAP data will identify which helper worked with that driver, and the amount of time worked by the driver and helper will be coextensive.  The difference in time between 5:30 a.m. (or 6:00 a.m.) and the time at which the driver recorded as leaving the Facility can be added to the route time to account for time worked before leaving the Facility.  Finally, thirty to sixty minutes can be added to the total to account for the time worked upon returning to the Facility to arrive at the total number of hours worked in a day.  The employee's daily hours for one workweek, Monday to Sunday, can be added together to determine whether that individual worked more than forty hours.  The Contract Logix data can be used to obtain contact information for every driver and helper to help facilitate notice.  While greater precision would have been preferable, "the employees who make up [the] class will not be made to bear the cost of the employer's faulty record keeping."  *Hargrove*, 974 F.3d at 482.

### IV.   APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

Plaintiffs also seek to have themselves appointed as Class Representatives, and to have Ravi Sattiraju, Esq. of Sattiraju & Tharney, LLP appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g).  D.E. 155-24.  The Court previously held, without objection from Defendants, that

Plaintiffs met the adequacy requirement of Fed. R. Civ. P. 23(a)(4).  D.E. 100 at 13.  Thus, the Court will appoint Plaintiffs Espinal, Carbajal, Martinez, Calderon Romero, and Torres as Class Representatives.

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  Doing so requires the court to consider the following:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).  In addition, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Defendants have not raised any objection to this appointment.  Having reviewed Plaintiffs' representations as to Mr. Sattiraju and his firm's qualifications, *see, e.g.*, D.E. 87-2 at 39-40, and taking note of their work in developing and litigating this matter thus far, the Court will appoint them as Class Counsel.

## V.   CONCLUSION

For the foregoing reasons, and for good cause shown, Plaintiffs' motion for class certification, D.E. 155, is **GRANTED**.  An appropriate Order accompanies this Opinion.

Dated: January 26, 2023

_____
John Michael Vazquez, U.S.D.J.